IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CEDEAL HARPER,

                  Plaintiff,

v.                                            CIVIL ACTION NO.   2:13-cv-19796

MICHAEL BLAGG, et al.

                  Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion to dismiss filed by Defendants David Ballard, Jason Collins, Paul Parry, and Jim Rubenstein (collectively referred to as "the Supervisory Defendants").[1]  (ECF 17.)   For the reasons that follow, the Court **GRANTS** the motion to dismiss with respect to these four Defendants.

## I.    BACKGROUND

Plaintiff's Complaint, which was filed on July 15, 2013, alleges that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated by the Defendant prison officials when he was pepper sprayed while sitting, handcuffed and shackled, in a common area of his segregation unit at the Mount Olive Correctional Complex ("MOCC").

Specifically, Plaintiff alleges that, on Thursday, June 6, 2013, while housed in Pod 8, Cell 806 in the Quilliams II segregation unit at MOCC, Plaintiff was escorted out of his cell by two officers, with his hands cuffed behind his back and his legs shackled together.   (ECF 2 at 5, ¶13.) He was taken to the day room and handcuffed to a stool, while still fully shackled.   (*Id.*)   Plaintiff

---

[1]    Defendants Michael Blagg, Margaret Clifford, and James McCloud filed an Answer to the Complaint (ECF 15). Discovery is proceeding concerning these defendants and a separate Time Frame Order will be entered.

further alleges that, while he was sitting on the stool, Lieutenant Margaret Clifford, "in an overly dramatic fashion and out of nowhere," jumped in front of Plaintiff and started yelling at him, telling him to "look at the wall."   Plaintiff alleges that, while Clifford was yelling at him, she had a container of Oleoresin Capsicum ("OC spray" or "pepper spray") pointed at Plaintiff's face. (*Id.*, ¶ 14.)

Plaintiff further alleges that he attempted to "deescalate" the situation by talking to Clifford, but she told him to "shut up and face the wall," and he complied with her commands. (*Id.*. ¶ 15.)   Plaintiff contends that, while he was looking at the wall, Clifford told Officer Michael Blagg to spray Plaintiff if he moved.   Plaintiff alleges that he turned his head to see to whom Clifford was talking, and Blagg sprayed him twice with the OC spray.  (*Id.*, ¶ 16.)   Plaintiff further alleges that Blagg told him to "look at the floor," so Plaintiff "put his head down and sat there quietly."  (*Id.*, ¶ 17.)

Plaintiff's Complaint further alleges that, after a minute or so, Captain James McCloud came over and whispered in Plaintiff's ear, stating, "Now you can file another lawsuit."  (*Id.* at 6.) Plaintiff contends that he did not respond and sat there for approximately ten minutes before they removed him from the pod for decontamination.  (*Id.* at 6, ¶ 18.)

The Complaint does not indicate whether the incident itself was video-recorded. However, from Plaintiff's allegations, it appears that a video recording was made after the incident, in which Lieutenant. Clifford stated that Plaintiff was sprayed with the OC spray for "refusing an order."  (*Id.*, ¶ 19.)   Plaintiff further alleges that, while on camera, he reminded Captain McCloud about the comment he had made to Plaintiff, but he believes McCloud told him to get in the shower.  (*Id.*, ¶ 20.)

Plaintiff further alleges that, after he had been placed back in his cell, he saw Warden David Ballard, Associate Warden of Security Paul Parry, and others come into the pod.   Plaintiff states that he "stared at" Warden Ballard, who "looked back at him," until an officer instructed Plaintiff to sit on his bunk.   (*Id.*, ¶ 21.)   Plaintiff does not allege that Ballard or Parry were present at the time that he was pepper sprayed.

Plaintiff's Complaint alleges that Plaintiff believes that the actions of Clifford, McCloud and Blagg were "a concerted effort to retaliate against Plaintiff for filing Civil Actions 2:12-cv-00656 (an excessive force case against Captain McCloud and others) or Civil Action No. 2:12-cv-07451 (a suit that includes retaliation claims against Captain McCloud and others)."   (*Id.* at 6-7, ¶ 22.)

The Complaint further alleges that Defendants McCloud, Clifford, Collins, Parry, Ballard and Rubenstein:

> has or had actual knowledge of the pervasive, longstanding and well documented violations of constitutional rights, excessive force and retaliation and they failed to adequately and properly investigate, take corrective action against, supervise or discipline their employees or subordinates who engaged in such alleged conduct and, thus, tacitly authorized the Plaintiff's and other inmates['] alleged constitutional violations and/or injuries  and failed to protect the Plaintiff and other inmates from such constitutional violations and injuries.   Also the individuals created policies or customs allowing, encouraging and/or tacitly authorized the constitutional violations or injuries.

(*Id.* at 7, ¶ 23.)   The Complaint further alleges that:

> At this facility, Mount Olive Correctional Complex, superiors or supervisors allow subordinates to:   (1) spray people or use excessive force for refusing orders, such as but not limited to:   (A) not shaving, (B) kicking a door, (C) flooding a cell, (D) popping a sprinkler, or (E) anything or order that is not essential to the safety of an officer or an inmate; (2) not use efforts to temper before using force on inmates in segregation; and (3) violate policies such as the Less-Lethal Use of Force and Calculated Use of Force.

3

*Id.*, ¶ 24.)

Plaintiff's Complaint further alleges that he had informed the Commissioner (James Rubenstein) and Warden (David Ballad) of the excessive use of force and retaliation against him and other MOCC inmates through grievances or other forms of communication.  (*Id.*, at 7-8, ¶ 25.)

Plaintiff claims that, due to the excessive force and retaliation, he has suffered pain and emotional distress, humiliation and embarrassment, nightmares and mood swings.  (*Id.*, ¶ 26.) He claims he suffered physical harm such as burning of the face, eyes and private parts, breathing problems, sinus problems, and swelling of the face.  (*Id.*)

Plaintiff contends that he exhausted his administrative remedies concerning this incident by filing a grievance on June 6, 2013.  He claims that he received responses denying his grievances stating that "Relief sought cannot be granted at this level" and "There has been no retaliation against you."  (*Id.*, ¶ 27.)  Plaintiff further alleges that he appealed these responses to the Commissioner, but does not know the date.  (*Id.*)

Plaintiff's Complaint contains allegations concerning the conduct of all of the Defendants. However, for the purpose of addressing the motion to dismiss filed by Defendants Rubenstein, Ballard, Collins and Parry, the Court will focus on the specific allegations concerning those Defendants.   First, the Complaint identifies these Defendants as follows:

> 6.    Defendant, Jason Collins, is the associate warden of programs of Mount Olive Correctional Complex.  Plaintiff does not know exactly what this person does.

> 7.    Defendant, Paul Parry, is the associate warden of security of the Mount Olive Correctional Complex.  Plaintiff does not know exactly what this person does.

> 8.     Defendant, David Ballard, is the Warden of Mount Olive Correctional Complex.   Plaintiff does not know exactly what this person does. He may be legally responsible for the operation of Mount Olive Correctional Complex and for the welfare of all the inmates of the persons [sic].
>
> 9.     Defendant, Jim Rubenstein, is the commissioner of the  State  of  West Virginia.   He is legally responsible for the overall operation of the Departments and/or each institution under its jurisdiction, including but not limited to Mount Olive Correctional  Complex.

(ECF 2 at 3.)   As to these Supervisory Defendants, the Complaint further alleges:

> By having knowledge of the pervasive, longstanding and well documented violations of constitutional rights or injuries, excessive force and retaliation against the petitioner [Plaintiff] and other inmates and failing to take corrective action against the misconduct, encouraging the misconduct, allowing the misconduct to continue, failing to protect against the misconduct, failing to adequately and properly supervise or discipline subordinates or creating policies or customs that allow the misconduct and thus tacitly authorized the Plaintiff's and other inmates['] constitutional violations and injuries, Defendants . . . Collins, Parry, Ballard and Rubenstein is [sic; are] also violating Plaintiff Harper's rights under the Eighth Amendment to the United States Constitution and causing Plaintiff Harper pain, suffering and/or emotional distress.

(*Id.* at 11, ¶ 35.)   Plaintiff seeks monetary damages, as well as declaratory and injunctive relief.

(*Id.* at 12-14, ¶¶ 36-46.)

     Plaintiff has attached two exhibits to his Complaint.  Exhibit A is a Violation Report indicating that Plaintiff was charged with Refusing an Order on June 6, 2013.   (ECF 2, Ex. A.) The Violation Report, which was submitted by Sgt. Michael Blagg, contends that Plaintiff was sprayed with OC spray because he was given multiple verbal directions to remain silent and stop moving around on the stool on which he was sitting because he was causing a K-9 in the room to become agitated.   (*Id.*)   The Violation Report indicates that Plaintiff began fidgeting and looking around the day room area.   At that time, Blagg deployed two one-second bursts of OC spray into Plaintiff's facial area.   (*Id.*)

The second exhibit attached to the Complaint is West Virginia Division of Corrections' Policy Directive 312.02 concerning Less-Lethal Use of Force.   (*Id.*, Ex. B.)

On April 9, 2013, Defendants Ballard, Collins, Parry and Rubenstein filed the pending motion to dismiss (ECF 17) and a Memorandum of Law in support thereof (ECF 18). Defendants' motion asserts that Plaintiff's Complaint documents fail to state a claim upon which relief can be granted, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.   LEGAL STANDARDS

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."   While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."   *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case.   The Court wrote:

> Two working principles underlie our decision in *Twombly*.   First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).   Rule 8 . . . does not unlock the doors of discovery for a Plaintiff armed with nothing more than conclusions.   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.   *Id.*, at 556.

6

* * *

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678–679.

### III.    DISCUSSION

Defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard. The Supervisory Defendants assert that Plaintiff's allegations against them attempt to set forth a cause of action for "supervisory liability" for the alleged constitutional deprivations by other officers. Their Memorandum of Law further asserts:

In doing so, however, the Plaintiff has merely recited the elements of a cause of action, without including any factual support for his conclusions. Therefore the allegations in the Complaint against these Defendants are not entitled to the presumption of truth and are insufficient to state a claim upon which relief can be granted pursuant to Rule 8 of the *Federal Rules of Civil Procedure*, as that Rule has been interpreted in [*Iqbal*] which is dispositive of this issue.

(ECF 18 at 3.) The Court will address the Supervisory Defendants' specific arguments made in their motion and supporting memorandum and Plaintiff's response thereto in turn.

### A.    Official Capacity Claims

The Supervisory Defendants' Memorandum of Law asserts that Plaintiff has impermissibly attempted to sue these Defendants in their official capacities, and that such allegations must be disregarded for purposes of determining whether the Plaintiff has stated a claim upon which relief can be granted. Their memorandum of law states in pertinent part:

7

In order to state a claim for damages under 42 USC Section 1983, an aggrieved party must officially allege that he was injured by "the deprivation of any rights, privileges, or immunity secured by the constitution and laws" by a "person" acting under color of state law. *See USC Section 1983*; *Monell v. Department of Social Services*, *436 US 658, 691 (1978)*. The Supreme Court in [*Iqbal*] began its analysis by acknowledging that "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." [*Iqbal*] *Supra at 1948*. Rather, "a Plaintiff must plead that each government official Defendant, through the Official's own individual actions has violated the Constitution. ["] *Id.*

(ECF 18 at 3.)

The Supervisory Defendants further assert that Plaintiff has impermissibly attempted to sue them for monetary damages in their official capacity because, neither a state, nor its officials acting in their official capacities, are "persons" under the civil rights statutes. (*Id.* at 3-4.) In *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court stated:

Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed.

[Citations omitted].

Based upon this holding, Defendants assert that "only the actions of the Supervisory Defendants in their individual capacities can be considered for purposes of determining whether Plaintiff has sufficiently stated a cause of action." (*Id.* at 4.)

Pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a

citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). The Eleventh Amendment, however, permits a federal court to enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from state funds. *Id.* at 337. Thus, although Plaintiff may seek injunctive relief from Defendants in their official capacity, it is clear that Defendants are immune from liability for monetary damages in that capacity under the Eleventh Amendment. Consequently, the Court **GRANTS** the motion to dismiss to the extent that he is seeking monetary damages against the Defendants in their official capacities.

B. *Individual Capacity Claims*

The Supervisory Defendants' assert that the Plaintiff's Complaint also fails to state a claim upon which relief can be granted against them because Plaintiff has not sufficiently alleged facts to support a claim of supervisory liability concerning the alleged violation of Plaintiff's Eighth Amendment rights.[2] Plaintiff does not allege that any of the Supervisory Defendants were present at the time Plaintiff was pepper sprayed[3] or that they were in any way directly involved in this

---

[2]   Although Plaintiff has alleged that the conduct of Defendants Blagg, Clifford and McCloud also violated his First Amendment rights with regard to their alleged retaliation for his filing of lawsuits, a close reading of the Complaint indicates that his supervisory liability allegations are limited to the Eighth Amendment clams.

[3]   The allegations in the Complaint appear to state that Defendants Ballard and Parry walked through the pod after the incident occurred.

9

incident.   Rather, Plaintiff's Complaint alleges that the alleged failure of the Supervisory Defendants to properly investigate, train, supervise and discipline their subordinate correctional officers amounts to deliberate indifference that permitted the violation of Plaintiff's constitutional rights.   (*Id.* at 4-5).

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations.   Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."   13 F.3d at 798 (quoting *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).   In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the Plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the Plaintiff.

13 F.3d at 799.   (ECF 18 at 5–6). In *Farmer v. Brennan*, 511 U.S. 825 (1994), however, the Supreme Court clarified that a prison official's actual subjective awareness of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment.   *Id.* at 837–38.   Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should

10

have perceived, but did not in fact perceive.  *Id.* at 838.  (*Id.*)

In discussing the *Shaw* requirements, the Supervisory Defendants assert that a plaintiff cannot satisfy the actual knowledge element by pointing to a single incident or isolated incidence. (ECF 18 at 6.)  They further note that a plaintiff may show deliberate indifference or tacit authorization by demonstrating a supervisor's continued inaction in the face of documented widespread abuses.  (*Id.* at 5.)  However, the Plaintiff must be able to show "that there was an affirmative causal link between the supervisor's inaction and the particular Constitutional injuries suffered by the Plaintiff."  *Id.*  (*Id.* at 6-7).

The Supervisory Defendants further contend:

> All the Plaintiff's allegations against these Defendants contained in the Complaint are entirely conclusory and form like recitals of the legal elements of the claim of supervisory liability, without one single supporting fact that can lead this Court to conclude the Plaintiff's claims for Supervisory liability are plausible, as opposed to merely "possible."  [*Iqbal*] requires that the Plaintiff demonstrate to some degree, the supporting factual basis upon which the claim for Supervisory liability is based. The allegations in the Complaint do not meet this standard and, therefore, it is proper for this Court to dismiss these Defendants from the above-captioned matter.

(*Id.* at 7–8.)

Finally, the Supervisory Defendants assert that they are entitled to qualified immunity on Plaintiff's claims.  As noted in their supporting memorandum of law:

> Qualified immunity is designed to protect public officials from the threat of litigation resulting from decisions made in the course of their employment.  *See Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995).  In order to sustain a viable claim against a State agency or its employees or officials acting within the scope of their authority sufficient to overcome this immunity, it must be established that the agency employee or official knowingly violated a clearly established law, or acted maliciously, fraudulently, or oppressively.  *Parkulo v. W. Va. Bd of Probation*, 199 W. Va. 161, 483 S.E.2d 507 (1996).  In other words, the State, its agencies, officials, and employees are immune for acts or omissions arising out of the exercise of discretion in carrying out their duties, so long as they do not violate any known law or act with malice or bad faith.  *Id.* S*yl. Pt. 8.*

11

(ECF 18 at 8–9.)   Although Defendants have cited West Virginia case law, the federal authority

on qualified immunity generally applies the same principles, establishing that "[g]overnment

officials performing discretionary functions are entitled to qualified immunity from liability for

civil damages to the extent that 'their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.'"   *Wilson v. Layne*, 141

F.3d 111, 114 (4th Cir. 1998).   Their memorandum of law reiterates:

> The only allegations or inactions which allegedly for [sic; form] the basis of
> liability against these Defendant[s] are their failure to properly investigate, train,
> supervise, and discipline other officers.   All of Plaintiff's claims against these
> Defendants asserted in his Complaint, therefore, allege deficiencies in the
> management of subordinates, which is a discretionary function, and which falls
> under the protection and [sic; of] qualified immunity.
>
> While the Plaintiff has alleged willful, wanton, intentional, malicious,
> callous and reckless conduct on the part of these Defendants in an apparent attempt
> to defeat qualified immunity, such conclusory [sic; conclusory] allegations are not
> entitle[d] to consideration under the reasoning and analysis of [*Iqbal*], absent
> supporting facts which would make such allegations plausible.   As previously
> noted herein, the Plaintiff has only alleged conclusory [sic; conclusory]
> statements reciting the elements of a cause of action.   Therefore, it is proper for
> this Court to dismiss the Defendants from the above-captioned matter.

(ECF 18 at 8–9.)

On October 1, 2013, Plaintiff filed a Response to the Supervisory Defendants' Motion to

Dismiss.   (ECF 30.)   After repeating the allegations he made against the Supervisory Defendants

in his Complaint, Plaintiff agrees that his claims against Defendants in their official capacities

cannot proceed, at least to the extent that he is seeking monetary damages.   (*Id.* at 4, 7-8.)

Plaintiff, however, notes that the law permits him to seek injunctive relief from these Defendants

in their official capacity; thus, Plaintiff claims that these Defendants are not entitled to complete

dismissal.   (*Id.* at 4, 7-8.)   The Court will address Plaintiff's claims for injunctive relief *infra.*

Concerning Defendants' assertion that they are entitled to qualified immunity, Plaintiff's Response states:

> Plaintiff avers at this stage of the proceedings, based upon the facts alleged in the Complaint taken in light most favorable to the Plaintiff, the defendants['] conduct, under the circumstances, did violate clearly established constitutional rights of which a reasonable person would have known.   Thus, the Plaintiff avers that the allegations in the Plaintiff's Complaint states enough facts to state a claim to relief that is plausible on its face against defendants Ballard, Rubenstein, Parry and Collins, and that the facts presently before the court are insufficient to establish that these defendants are entitled to qualified immunity.

(*Id.* at 13.)

Plaintiff's claims against Defendants Blagg, Clifford, and McCloud arise under the Eighth and First Amendments.   First, Plaintiff claims that the use of pepper spray against him under the circumstances was an excessive use of force that violated his Eighth Amendment right to be free of cruel and unusual punishment.   Second, Plaintiff alleges that Defendants Blagg, Clifford, and McCloud violated his First Amendment rights because they were allegedly retaliating against Plaintiff for his having filed two lawsuits—one concerning prior conduct by Defendant McCloud and other staff and the other concerning various conditions of confinement at MOCC.   In the instant case, Plaintiff has alleged that, immediately after Plaintiff was pepper sprayed, McCloud told him, "Now you can file another lawsuit."   (ECF 2 at 6, ¶ 18.)

The Complaint, however, does not allege any specific facts concerning *actual conduct* by each Supervisory Defendant.   As noted in *Evans v. Chalmers*:

> To begin with, the Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct."   [556 U.S. at 677.]

703 F.3d 636, 660–61 (4th Cir. 2013).   Thus, to hold the Supervisory Defendants liable, Plaintiff

13

must allege facts that allow the Court to draw a reasonable inference that the Supervisory

Defendants' own conduct permitted the constitutional violation to occur.  *Iqbal*, 556 U.S. at 677.

The Plaintiff's allegations in paragraph 23 concerning these Defendants state that they:

> Has [sic] or had actual knowledge of the pervasive, longstanding and well
> documented violations of constitutional rights, excessive force and retaliation and
> they failed to adequately and properly investigate [sic], take corrective action
> against, supervise or discipline their employees or subordinates who engaged in
> such alleged conduct and, thus, tacitly authorized the Plaintiff's and other
> inmates['] alleged constitutional violations and/or injuries  and failed to protect
> the Plaintiff and other inmates from such constitutional violations and injuries and
> failed to protect the Plaintiff and other inmates from such constitutional violations
> and injuries.  Also the individuals created policies or customs allowing,
> encouraging and/or tacitly authorized the constitutional violations or injuries.

ECF 2 at 7.)  This allegation is nothing more than a vague, conclusory statement of the elements

of a supervisory liability claim.   While Plaintiff has attempted to specify allegedly

unconstitutional conduct that the "superior or supervisors" at MOCC have allowed to occur (ECF

2 at 7, ¶ 24), even his list of such conduct is insufficient to allow the court to draw a reasonable

inference of specific misconduct by these particular Supervisory Defendants.

> Likewise, paragraph 35 of his Complaint states:
>
> By having knowledge of the pervasive, longstanding and well documented
> violations of constitutional rights or injuries, excessive force and retaliation against
> the Petitioner and other inmates and failing to take corrective action against the
> misconduct, encouraging the misconduct, allowing the misconduct to continue,
> failing to protect against the misconduct, failing to adequately and properly
> supervise or discipline subordinates or creating the policies or customs that allow
> the misconduct, and thus tacitly authorized the Plaintiff's and other inmates[']
> constitutional violations and injuries, Defendants . . . Collins, Parry, Ballard and
> Rubenstein is [sic; are] also violating Plaintiff Harper's rights under the Eighth
> Amendment to the United States Constitution and causing Plaintiff Harper pain,
> suffering and/or emotional distress.

(ECF 2 at 11–12.)   These allegations do not allege specific facts concerning the conduct of each of

these Defendants upon which the Court can draw a reasonable inference that they in fact violated

14

the Plaintiff's constitutional rights.   Accordingly, pursuant to the holdings in *Twombly* and *Iqbal,* Plaintiff has not shown a claim for relief against Defendants Ballard, Collins, Parry and Rubenstein that is plausible on its face.

      C.    *The Plaintiff's Claim for Injunctive Relief.*

In paragraph 36 of his Complaint, Plaintiff alleges that he "has no plain, adequate or complete remedy at law to redress the wrongs described herein."   (ECF 2 at 12, ¶ 36.)   He further claims that he will be irreparably injured unless the Court grants him declaratory and prospective injunctive relief.   (*Id.*)   Also, in paragraphs 38 and 39, Plaintiff requests "any and all prospective relief the court deems appropriate and necessary" and a "preliminary and permanent injunction order defendants Ballard Rubenstein, Parry and Collins to: (A) any and all necessary and appropriate relief he court deems necessary and appropriate."   (*Id.* at 13, ¶¶ 38 and 39.)

These requests for injunctive relief are also vague and conclusory.   In order to receive injunctive relief, Plaintiff must show real and immediate threat of injury, *Los Angeles v. Lyons*, 461 U.S. 95, 102-06 (1983), and in prison conditions cases, prospective relief may extend no further than that necessary to correct the violation of the federal right that has been infringed.   18 U.S.C. § 3626(a)(1)(A).

Moreover, a preliminary injunction is an extraordinary remedy never awarded as of right. In each case, the Court must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences. *Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982).   "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)).   The plaintiff must demonstrate a likelihood of irreparable harm without a preliminary injunction; a mere possibility of harm will not suffice.   *Id.* at 21.   And "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Romero–Barcelo*, 456 U.S. at 312.

Regarding likelihood of success, prior law in the Fourth Circuit was that there is a "'flexible interplay' among all the factors considered . . . for all four [factors] are intertwined and each affects in degree all the others." *Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir.1977) (citations omitted).   Accordingly, plaintiffs were not strictly required to demonstrate likelihood of success on the merits; rather, "it [was] enough that grave or serious questions on the merits are presented." *Id.*   But in the wake of the Supreme Court decision in *Winter v. NRDC*, the *Blackwelder* balancing approach "may no longer be applied in granting or denying preliminary injunctions in the Fourth Circuit."   *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir.2009) ( RTAO I ), *vacated on other grounds*, 559 U.S. 1089 (2010) and *adhered to in part sub nom. Real Truth About Obama, Inc. v. FEC*, 607 F.3d 355 (4th Cir.2010) (RTAO II ). [4]

Instead, the Fourth Circuit has held that a party seeking the preliminary injunction must demonstrate by "a clear showing that it is likely to succeed at trial on the merits." *RTAO I*, 575 F.3d at 351.   The Fourth Circuit has not expressly required that a movant prove success on the merits is

---

[4]     Although the original decision in *Real Truth* was vacated by the Supreme Court for further consideration in light of the decision in *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case.   *See* 575 F.3d at 345–347.

"more likely than not" in order to meet the requirement of a clear showing, but the new requirement "is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious question for litigation." Id. at 345–46.

Because Plaintiff's Complaint fails to state a plausible claim against Defendants Ballard, Collins, Parry and Rubenstein, and because the Plaintiff has made no specific request for injunctive relief, or shown that he is likely to suffer immediate and irreparable harm, Defendants Ballard, Collins, Parry and Rubenstein may not remain in this civil action. Without a claim for injunctive relief, these officials may be fully dismissed as Defendants in this case.

IV. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' motion to dismiss [ECF 17], **DISMISSES WITH PREJUDICE** Defendants David Ballard, Jason Collins, Paul Parry, and Jim Rubenstein from this action, and **DIRECTS** that this matter be referred to United States Magistrate Judge Dwane L. Tinsley for the continuation of the proceedings concerning the remaining Defendants in this case.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 18, 2014

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

17