### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**CEDEAL HARPER,**

       **Plaintiff,**

**v.**                            **Case No. 2:13-cv-19796**

**MICHAEL BLAGG, MARGARET CLIFFORD,**
**and JAMES MCCLOUD,**

       **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court is the defendants' Motion for Summary Judgment (ECF No. 94). This matter is assigned to the Honorable Thomas E. Johnston, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

On July 15, 2013, the plaintiff filed a Complaint alleging that his right to be free from cruel and unusual punishment under the Eighth Amendment was violated by the defendants when he was pepper sprayed while sitting, handcuffed and shackled, in a common area of his segregation unit at the Mount Olive Correctional Complex ("MOCC"). On May 21, 2014, the plaintiff was granted leave to file an Amended Complaint, which is docketed as ECF No. 65).

Specifically, the plaintiff alleges that, on Thursday, June 6, 2013, while housed in Pod 8, Cell 806 in the Quilliams II segregation unit at MOCC, the plaintiff was escorted out of his cell by two officers, with his hands cuffed behind his back and his legs

shackled together.   (ECF No. 65 at 5, ¶13).   He was taken to the day room and handcuffed to a stool, while still fully shackled.   (*Id.*)   As he was being escorted, the plaintiff noticed defendants Blagg, Clifford, McCloud and another officer conversing. (*Id.*, ¶ 14).

The plaintiff further alleges that, while he was sitting on the stool, Lt. Margaret Clifford, "in an overly dramatic fashion and out of nowhere," jumped in front of the plaintiff and started yelling at him, telling him to "look at the wall."  The plaintiff alleges that, while Clifford was yelling at him, she had a container of Oleoresin Capsicum ("OC spray" or "pepper spray") pointed at the plaintiff's face.  (*Id.*, ¶ 15).

The plaintiff further alleges that he attempted to "deescalate" the situation by talking to Clifford, but she told him to "shut up and face the wall," and he complied with her commands.  (*Id.*. at 5-6, ¶ 16).  The plaintiff contends that, while he was looking at the wall, Clifford told Officer Michael Blagg to spray the plaintiff if he moved.  The plaintiff alleges that he turned his head to see to whom Clifford was speaking, and Blagg sprayed him twice in the face with the OC spray.  (*Id.*, ¶ 17).  The plaintiff further alleges that Blagg told him to "look at the floor," so the plaintiff "put his head down and sat there quietly."  (*Id.*, ¶ 18).

The plaintiff's Amended Complaint further alleges that, after a minute or so, Captain James McCloud came over and whispered in the plaintiff's ear, stating, "Now you can file another lawsuit."  The plaintiff contends that he did not respond and sat there for approximately 10 minutes before they removed him from the pod for decontamination.  (*Id.* at 6, ¶ 19).  The Amended Complaint further contends that Captain McCloud did not attempt to intervene in this use of force.  (*Id.* at 7, ¶ 26).

The Amended Complaint alleges that only the decontamination process was video-recorded, during which time Lt. Clifford stated that the plaintiff was sprayed with the OC spray for "refusing an order." (*Id.*, ¶ 20).  The plaintiff further alleges that, while on camera, he reminded Captain McCloud about the comment he had made to the plaintiff, but he believes McCloud just told him to get in the shower.  (*Id.*, ¶ 21).  The plaintiff was subsequently written up for "refusing an order" for "fidgeting and looking around the dayroom" by defendant Blagg.  (*Id.* at 7, ¶ 23).  The plaintiff further contends that the write-up was an attempt to justify the unnecessary and excessive use of force. (*Id.*)

The plaintiff's Amended Complaint alleges that the plaintiff believes that the actions of Clifford, McCloud and Blagg were "a concerted effort to retaliate against the plaintiff for filing Civil Actions 2:12-cv-00656 (an excessive force case against Captain McCloud and others) or Civil Action No. 2:12-cv-04751 (a suit that includes retaliation claims against Captain McCloud and others)." (*Id.*, ¶ 24).

The plaintiff claims that, due to the excessive force and retaliation, he has suffered pain and emotional distress, humiliation and embarrassment, nightmares and mood swings.  (*Id.*, ¶ 26).  He claims he suffered physical harm such as burning of the face, eyes and private parts, breathing problems, sinus problems, and swelling of the face. (*Id.*)

The plaintiff attached two exhibits to his initial Complaint.  Exhibit A is a Violation Report indicating that the plaintiff was charged with Refusing an Order on June 6, 2013.  (ECF No. 2, Ex. A).  The Violation Report, which was submitted by Sgt. Michael Blagg,  contends that the plaintiff was sprayed with OC spray because he was given multiple verbal directions to remain silent and stop moving around on the stool on

which he was sitting because he was causing a K-9 in the room to become agitated.  (*Id.*)

The Violation Report indicates that the plaintiff began fidgeting and looking around the

day room area.  At that time, Blagg deployed two one-second bursts of OC spray into the

plaintiff's facial area.  (*Id.*)

The second exhibit attached to the Complaint is West Virginia Division of

Corrections' Policy Directive 312.02 concerning Less-Lethal Use of Force.  (*Id.*, Ex. B).

On November 25, 2014, the defendants filed a Motion for Summary Judgment

(ECF No. 94) and a Memorandum of Law in support thereof (ECF No. 95).  Pursuant to

the holding in *Roseboro v. Garrison*, 529 F.2d 309 (4th Cir. 1975), the plaintiff had

previously been advised of his right and obligation to file a response to any dispositive

motion filed by the defendants.  (ECF No. 77).

On December 10, 2014, the plaintiff filed a Response to the defendants' Motion

for Summary Judgment, with exhibits.  (ECF No. 96).  The defendants did not file a

Reply.  This matter is ripe for adjudication.

## <u>STANDARD OF REVIEW</u>

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of

Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or
> defense – or the part of each claim or defense – on which summary
> judgment is sought.  The court shall grant summary judgment if the
> movant shows there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.  The court should state
> on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements

of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Id.* The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:

A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may: (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

A court must not resolve disputed facts, weigh the evidence, or make determinations of credibility. *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir.

1995); *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor. *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

## ANALYSIS

### A.    The plaintiff's Eighth Amendment claims fail as a matter of law.

The plaintiff claims that the use of pepper spray against him under the circumstances was an excessive use of force that violated his Eighth Amendment right to be free of cruel and unusual punishment. The defendants' Motion for Summary Judgment (ECF No. 94) and Memorandum of Law in support thereof (ECF No. 95) assert that the use of pepper spray by Sgt. Blagg was a reasonable amount of force under the circumstances, and was done in a good faith effort to restore order in the prison unit. Accordingly, the defendants assert that the plaintiff cannot successfully establish that the defendants violated his Eighth Amendment rights.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" This is a low standard. The Supreme

6

Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley* [*v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6. The majority opinion noted that "[t]he objective component of an Eighth Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" 503 U.S. at 8. [Citation omitted.]

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [Citation omitted.] This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. * * *

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [Citation omitted.] The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." [Citations omitted.]

*Id.*, at 9-10. Near the conclusion of the *Hudson* opinion, Justice O'Connor wrote: "To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity and decency' that animate the Eighth Amendment." *Id.*, at 11.

The Supreme Court, however, rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837.  Thus, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety."  *Id.* at 834. (Citations omitted.)  The negligent failure to protect inmates from violence will not suffice.  *Pressly*, 816 F.2d at 979.

The defendants' Memorandum of Law cites to excerpts from the plaintiff's deposition in which he describes the incident on June 6, 2013.  In pertinent part, the plaintiff testified as follows:

> A. Well, I was in my cell when the officers came in  McCloud, Blagg, Officer McCloud, Blagg, Lt. Clifford, several others came in the pod, I think they were doing cell searches or shake down.  They came and got me -- after several minutes they came and got me out of my cell, two officers.
>
> I was leaving the cell, I seen Capt. McCloud, Lt. Clifford, Blagg and another officer conversating.  The dog was in a box with this officer, with his handler.
>
> * * *
>
> A. And the officers escorted me out of my cell and handcuffed me and shackled, as I am now, feet shackled, handcuffed behind my back, set me on a stool, and then they chained me put up much of a defense.

And I was sitting there quietly just waiting to be put back in my cell. I mean I wasn't causing no problem or nothing sitting there. Wasn't yelling at nobody, never talked to nobody, you know, just waiting to be put in my cell. And out of nowhere Lt. Clifford jumped in front of my face with a Mark 9 out of nowhere and start yelling at me. And I was afraid of this lady shooting me with this gun for no reason. I'm like -- it's like -- it's like you in a store line and somebody pop up and try to rob you and you get shot. Like what's going on.

And this lady, I'm trying to talk to this lady to calm her down. Like look, lady. And there was something I was doing wrong. I believe that the lady wanted me not to look in my cell. But they had me positioned in a way that it was impossible not to look in my cell. So I was going to tell the lady to turn me around, but she wasn't trying hear. She told me to shut up and look at the wall.

And Officer Blagg, who I didn't know was standing behind me as I was yelling that -- as I was talking to Lt. Clifford, she told him that if I moved to mace me. And I turned to see who she was talking to, and he shot me. He just shot me. Shot me -- shot me in the face twice and told me to look at the floor.

And I sat there for a second and McCloud comes over and whispers in my ear, "Now you can file another lawsuit." And I thought that was very strange. Like, it's crazy.

* * *

Q.   So you're trying to engage in a conversation with her so that she wouldn't spray you.

A.   Yes.

Q.   Okay. She at that point then tells someone else, you don't know who it is yet, "If he moves, spray him;" correct?

A.   Yes.

Q.   You turn around to see who she's talking to and they spray you, correct?

A.   I kind of turned my head. You know, it was more like a reaction, like who is she talking to. I mean I kind of slightly turned my head like this, and I was shot in the face.

Q.   You agree you moved.

9

A.     Well, my head.

Q.     Right.

A.     Yes.

Q.     But your head is part of your body; correct?

A.     Yes.

Q.     You moved part of your body to face the officer to see who she was talking to and you were immediately sprayed, correct?

A.     Yes.

Q.     Just like she said was going to happen.

A.     Yes.

(ECF No. 95 at 2-3, 5-6 and Ex. A at 27-29, 31-34).

The defendants' Memorandum of Law asserts that the use of force against the plaintiff was appropriate under the circumstances, given the plaintiff's significant history of prison rules violations and the volatile environment on the pod at the time of the incident.  (*Id.* at 6-7).  Accordingly, the defendants contend that the force was used in a good faith effort to restore order.  (*Id.* at 9).  The defendants' Memorandum of Law then identifies and discusses five factors set forth in *Whitley* that must be weighed in determining whether force was applied in a good faith effort to maintain or restore order, or whether it was done so maliciously and sadistically for the very purpose of causing harm.  (*Id.* at 13-16).  The five factors identified by the Supreme Court to be used in making this determination are:  (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any

10

efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996). (ECF No. 104 at 13).

The *Whitley* case involved a riot at the Oregon State Penitentiary where a prison officer was taken hostage. In an attempt to free the hostage, a plan was put in place for an unarmed prison security manager to enter the cell block where the hostage was being held, followed by prison officers armed with shotguns. The security manager ordered one of the armed officers to fire a warning shot and to shoot low at any inmates found climbing the stairs in the direction of the security manager. During this rescue attempt, one of the officers shot an inmate in the left knee. The inmate filed suit in federal court, and at the conclusion of a jury trial, the District Court directed a verdict for the defendants. The Court of Appeals subsequently reversed that ruling and remanded the case to the District Court for a new trial. The Supreme Court granted certiorari, and ultimately found no Eighth Amendment violation.

The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320. The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547). Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support

11

a reliable inference of wantonness in the infliction of pain, under the standard we have

described, the case should not go to the jury." *Id.* at 322.

The defendants' Memorandum of Law further states:

> The infliction of pain in the course of a prison security measure
> does not amount to cruel and unusual punishment simply because it may
> appear in retrospect that the degree of force authorized or applied for
> security purposes was unreasonable and hence unnecessary in the strict
> sense. [*Whitley*, 475 U.S. at 319]. "Prison officials do not violate the U.S.
> Const. Amend VIII whenever it appears in retrospect that the infliction of
> pain during a security measure could theoretically have been avoided." *Id.*
> at 319. The U.S. Supreme Court has found that "not every push or shove,
> even if it may later seem unnecessary in the peace of a judge's chambers,
> violates a prisoner's constitutional rights." *Hudson v. McMillian*, 503 U.S.
> 1, 9, 112 S. Ct. 995, 117 L. Ed.2d 156 (1992).

(ECF No. 95 at 10). The defendants' Memorandum of Law addresses the five factors in

relation to the plaintiff's case as follows:

> With regard to the first part of the test, it is clear that there was a highly
> volatile situation in the Quilliams units at [sic; as] mass cell searches were
> being conducted in order to restore order to the segregation units. This
> need to restore order was warranted by the simple fact that thirty-two (32)
> make-shift weapons were confiscated within the Quilliams units. After
> Plaintiff was removed from his cell and secured to the [sic] a stool, Capt.
> Clifford gave him loud, clear, verbal commands to stare at the wall.
> Further, Plaintiff admittedly heard Capt. Clifford tell Sgt. Blagg that if
> Plaintiff were to move, then Plaintiff was to be sprayed with OC. In fact,
> Plaintiff testified that he moved by turning his head after Capt. Clifford's
> orders were given.

(*Id.* at 11). The defendants contend that the need for this use of force was clear in light

of these circumstances, and that there is no evidence from which a reasonable inference

can be drawn that Capt. Clifford or Sgt. Blagg acted maliciously or sadistically to cause

the plaintiff harm. Their Memorandum further states:

> Here, Capt. Clifford and Sgt. Blagg were confronted with an unruly inmate
> with a history of disobeying prison rules and with escalating disorder in
> the Quilliams units due to mass cell searches. Capt. Clifford and Sgt. Blagg
> made a split-second judgment on how best to handle the situation. As the
> Court in *Whitley* noted, "[t]he infliction of pain in the course of a prison

12

security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence, unnecessary in the strict sense." *Whitley*, 475 U.S. at 319.

(*Id.* at 12).

Turning to the second factor, the defendants assert that "Capt. Clifford and Sgt. Blagg only used that force which was reasonably necessary to obtain Plaintiff's compliance." (*Id.*)  Their Memorandum further states:

> Notably, even if Capt. Clifford and Sgt. Blagg deviated from the rules set forth in Directive 312.02[1], any such variance does not *per se* establish a violation of Plaintiff's constitutional rights.  To be sure, compliance with the Policy Directives may in certain circumstances be instructive on whether Defendants acted in good faith.  They do not, however, establish constitutional minima.  *Cf. Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979) (noting that correctional standards recommendations by various organizations and associations "may be instructive in certain cases" but that "they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question.").  Policy Directive 312.02 "delineates appropriate *guidelines* concerning the use of physical, less-lethal force by division personnel." (*See* Policy Directive 312.02) (emphasis added).  It is a "model to assist staff in designating appropriate conduct when selecting a level of control for use on a resisting inmate." (*Id.*)  The Use of Force Model" emphasizes that "[t]hese are *general guidelines and each situation should be assessed for the appropriate intervention strategy*.  In all situations, verbal direction and efforts to temper should be attempted unless doing so would create a risk to the safety of persons involved." (*Id.*) (emphasis added).

(*Id.* at 13).  The defendants' Memorandum contains a string citation of cases where the deployment of pepper spray was found to be a reasonable use of force.  (*Id.* at 12-13).  The undersigned notes, however, that in most of the cases cited by the defendants, the inmates were out of their cells and were in close proximity to correctional officers or other staff, thus placing at issue the immediate safety of those individuals.  (*Id.*)  While

---

[1] West Virginia Division of Corrections' Policy Directive 312.02 is attached to the plaintiff's Complaint (ECF No. 2, Ex. B) and the defendants' Motion Memorandum of Law in support of his Motion for Summary Judgment (ECF No. 96, Ex. D).

the plaintiff in the instant case was out of his cell, he was handcuffed and shackled to a stool, and there is no evidence that he was an immediate threat to the staff.

The defendants assert that the plaintiff cannot produce any objective evidence to support the third factor concerning the extent of any injury related to the alleged use of force.  Although the plaintiff complained of irritations and swelling immediately following the incident, the plaintiff admitted that he has suffered no lasting effects from the OC.  (*Id.* at 14).

Concerning the fourth factor, the defendants assert that, "[e]ven assuming that there was little likelihood that Plaintiff posed a risk of assault to Capt. Clifford or Sgt. Blagg, they responded to a volatile situation without the benefit of knowledge known in hindsight." (*Id.*)

Finally, with regard to the fifth factor to be weighed, the defendants claim that Capt. Clifford and Sgt. Blagg "tempered their response."  (*Id.*)  The defendants contend that:

> In accordance with the Use of Force Model, they could have employed a tazer [sic; Taser], a pepper ball or could have employed a bean bag round fired from a shotgun.  Despite the more invasive, painful and extreme measures available, the officers chose to exercise the least amount of force by deploying, in accordance with policy, two (2) one-second bursts of OC.

(*Id.*)

In sum, the defendants assert that a proper weighing of these factors supports a finding that the deployment of pepper spray by Sgt. Blagg, upon the order of Capt. Clifford, was done in a good faith effort to maintain or restore discipline and order and was not done maliciously or sadistically for the very purpose of causing harm.  (*Id.*) Thus, the defendants assert that there is no genuine issue of material fact, and they are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claims.

The plaintiff's Response to the Motion for Summary Judgment asserts that his history and the disturbance on the unit are largely irrelevant to whether this specific use of force was necessary.  (ECF No. 6 at 8).  The plaintiff further claims that he was not being unruly and did not pose any significant risk to the safety or security of the prison.  The plaintiff emphasizes the fact that he was handcuffed, shackled and chained to a stool, "rendering [him] unable to move or attack anyone," supporting a finding that this use of force was "completely needless."  (*Id.* at 10).

The plaintiff further asserts that the defendants completely disregarded prison policy when they used such force upon him.  Although the plaintiff acknowledges that the policy directives are essentially "guidelines," he contends as follows:

> The defendants never assessed the situation for the appropriate intervention strategy as required by Policy.  *Id.*  The use of force model establishes the behaviors that the plaintiff must demonstrate before control tools are used, which is passive/defensive resistance in common area and active aggression or aggravated active aggression in common area.  *Id.*  However, the plaintiff never demonstrated any of those forms of resistance or aggression as defined by policy.  See ECF No. 95-1 at 31-32.  In fact, defendant Blagg never reported in his incident report that the plaintiff resisted or was aggressive.  See ECF No. 95-1 at 63-64 and Exhibits B and C.  So why was Blagg's [sic; Blagg] using force?  Also Policy Directive 313.02 states, "Force and restraints may be used as follows . . . staff are authorized to apply physical restraints to gain control of an inmate who appears to be dangerous as outlined below . . . (F) The inmate fails to comply with security related instructions/directives.  See Exhibit A pg. 2.  There is no evidence that plaintiff failed to comply with a "security" related order.
>
> The record shows that the plaintiff never created a disturbance, never refused an order, never resisted or was aggressive as defined by Policy and thus defendant Blagg's use of force was completely needless, excessive, malicious and/or sadistic and constituted corporal punishment.  See Exhibit A-G.  (Exhibit G states "the plaintiff did not create a disturbance.")  Blagg also failed to follow DOC P.D. 312.02 as described above.

(*Id.* at 11-12).

The plaintiff's Response further asserts that defendant Blagg's incident report described the incident as follows:

> [Inmate] Harper, Cedeal # 43150 was given multiple verbal directions to remain silent and stop moving about on the stool he was sitting on as it was causing the posted K-9 to become agitated.    [Inmate] Harper immediately began fidgeting and looking around the Dayroom area.  I did then deploy two one second bursts of Oleoresin Capsicum from an MKIX with the intended target being Harper's center facial area.

(ECF No. 96 at 9 and Exs. B and C).  The plaintiff contends that, even if he did not comply with Capt. Clifford's order, his conduct did not pose a significant risk to the safety or security of the facility.  (*Id.*)  His Response states:

> The fact that the plaintiff was handcuffed, with his hands behind his back, both feet shackled and chain[ed] to the stool , see ECF No. 95 at 4; and Exhibits D and E attached, rendering the plaintiff defense [sic; defenseless] and unable to move or attack anyone, is indicative of the completely needless use of force on the plaintiff.

(*Id.* at 10).  The plaintiff further asserts that there is no evidence in the record indicating that the plaintiff attempted to move off of the stool and, in fact, the evidence would demonstrate that it was impossible for him to do so.  (*Id.* at 12; Ex. D).  Thus, the plaintiff disputes the defendants' contentions that the amount of force that was used was necessary.  He also disputes their contention that they tempered the force used by employing pepper spray rather than other more painful or potentially harmful tools that were available to them.  (*Id.* at 15).  Moreover, the plaintiff's Response contends:

> P.D. 313.02 (V)(C) states: "when behavior by an inmate is observed which could become violent/confrontational, staff should immediately attempt to resolve the behavioral problem in a non-confrontational matter [sic; manner], through dialogue."   The defendants never reported observing such behavior.  *Id.*  In fact, P.D. 313.02(V)(C)(1)(A) and (B) (1 and 2) states that the "<u>unit team</u>" "shall" (mandatory language) attempt to resolve the situation through dialogue.  Defendant Blagg and Clifford never contacted "unit team" members and/or never reported such in there [sic; their] reports or memos.   P.D. 313.02 (V)(C)(2)(B)(2) states "confrontation avoidance requires communication between the inmate's unit team, watch

16

> commander/operations officer, medical/mental health staff and others"
> and they are to confer and gather pertinent information about the inmate
> and situation, and make necessary and appropriate assessments [of] the
> inmate and situation for the necessary and appropriate intervention and
> assist in determining the need for force.

(*Id.* at 17).  In sum, the plaintiff contends that no use of force was necessary under the circumstances.  Therefore, he asserts that defendants Blagg and Clifford exceeded their authority and usurped their power.  (*Id.* at 18).

Applying the *Whitley* factors to the undisputed facts of this case viewed in the light most favorable to the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that the force used against the plaintiff by defendant Blagg, at the direction of defendant Clifford, on July 31, 2013 was used in a good faith effort to restore order, and not maliciously or sadistically for the purpose of causing harm.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that defendants Blagg and Clifford are entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claims.

Furthermore, because the undersigned has proposed that the presiding District Judge find that the conduct of defendants Blagg and Clifford did not violate the plaintiff's Eighth Amendment rights, the undersigned further proposes that the presiding District Judge **FIND** that there also is no basis for Eighth Amendment liability against defendant McCloud for failure to intervene.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there are no genuine issues of material fact and that defendant McCloud is entitled to judgment as a matter of law on the plaintiff's Eighth Amendment claim against him.

**B.     The plaintiff's First Amendment retaliation claims also fail as a matter of law.**

The plaintiff's Complaint further alleges that defendants Blagg, Clifford and McCloud violated his First Amendment rights because, when they pepper sprayed the plaintiff on June 6, 2013, they were allegedly retaliating against the plaintiff for his having filed two lawsuits; one concerning prior conduct by defendant McCloud and others staff; and the other concerning various conditions of confinement at MOCC.  In the instant case, the plaintiff has alleged that, immediately after the plaintiff was pepper sprayed, McCloud told him, "Now you can file another lawsuit."  (ECF No. 2 at 6, ¶ 18).

The defendants' Memorandum of Law asserts that, beyond the bare assertions in his Complaint, the plaintiff can offer no evidence that Capt. McCloud directed or conspired with Capt. Clifford and/or Sgt. Blagg to spray the plaintiff with OC in retaliation for a previously-filed lawsuit.  Their Memorandum of Law further states:

> Genuine disputes of material facts are not demonstrated by the bald statements of a non-moving party in depositions.  *Stone v. University of Md. Medical Sys. Corp.*, 855 F.2d 167 (4ᵗʰ Cir. 1988).  A party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4ᵗʰ Cir. 1985).  Unsupported speculation by a non-moving party is insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126 (4ᵗʰ Cir. 1987).  Mere unsupported speculation is not enough to defeat a summary judgment motion."  *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4ᵗʰ Cir. 1995).

In support of this argument, the defendants cite to the following testimony from the plaintiff's deposition:

Q.     You don't have any evidence that Mr. McCloud somehow directed or conspired or encouraged Mr. Blagg to spray you, do you?

A.     I think the circumstance would imply that he did it.  I believe the actions that they took was the direct result of me filing a prior

18

> lawsuits [sic] against them.   There is no reason for him to be whispering that in my ear.  I couldn't believe he had done it.

Q.    But you'd agree with me what you just stated, you're making an assumption that he did that?

A.    Do I have any like verbal testimony or anything?  No.

(ECF No. 95, Ex. A at 40-41).

The plaintiff's Response to the Motion for Summary Judgment asserts as follows:

> Retaliation, though it is not expressly referred to in the constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights.  *Perry v. Sinderman*, 408 U.S. 593, 597 (1972).  The defendants claim "The plaintiff can offer <u>no</u> evidence that Capt. McCloud directed or conspired with OC in retaliation for a previously filed lawsuit."  However, the plaintiff disagrees.

(ECF No. 96 at 19-20).  The plaintiff reiterates the facts surrounding the pepper spray incident, particularly the fact that defendant McCloud came over after the plaintiff had been pepper sprayed and allegedly stated, "now you can file another lawsuit."  (*Id.* at 20).   The plaintiff further emphasizes that he had previously filed another lawsuit against defendant McCloud for the alleged excessive use of force.  (*Id.*)  The plaintiff's Response further states:

> Thus, whether circumstantial or not, there is ample evidence to establish that Clifford, Blagg and McCloud retaliated against the plaintiff for a previously filed 1983 civil action.  The plaintiff does not have to produce direct evidence of a meeting of the minds, it is sufficient to come forward with specific circumstantial evidence that McCloud, Blagg and Clifford shared the same retaliation or conspiratorial objective.  *See Hinkle v. City of Clarksburg*, 81 F.3d 416 (1996).

> Since there is sufficient circumstantial evidence or else the defendants' Motion for Summary Judgment should be denied in relation to plaintiff's allegation of retaliation against and granted for the plaintiff.

(*Id.* at 21).

Prisoner retaliation claims are treated "with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (internal quotations omitted).  In fact, this court has held:

> To prevail upon a claim of retaliation, the inmate must specifically demonstrate that but for [his] protected conduct [he] would not have been subjected to the alleged retaliatory act.  *See Huang v. Board of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990).  Essentially, the inmate must first demonstrate that [he] engaged in protected conduct and second that [his] protected conduct motivated the retaliatory act.

*Powers v. Fed. Bureau of Prisons*, 2012 U.S. Dist. LEXIS 101698, *58-59 [2012 WL 2998510, *17] (S.D. W. Va. May 23, 2012).  A First Amendment retaliation claim contains three essential elements.  The inmate must demonstrate that: (1) his speech was protected; (2) the defendants' alleged retaliatory action adversely affected his constitutionally protected speech; and (3) a causal relationship exists between his speech and the defendants' retaliatory action."  *Smith v. Berlin*, 2014 U.S. Dist. LEXIS 139725, *39 (S.D. W. Va. Aug. 28, 2014).[2]

The Fourth Circuit recently addressed First Amendment retaliation claims in *McFadden v. Lewis*, 517 F. App'x 149, 150 (4th Cir. Apr. 2, 2013) (unpublished) and *Booker v. South Carolina Dep't of Corr.*, 583 F. App'x 43 (4th Cir., Aug. 28, 2014) (unpublished).  Both cases recognize that retaliation against an inmate for the exercise of his right to access the courts states a cognizable claim under the First Amendment.  As noted in *McFadden*, "such retaliation by an official is actionable even if the act would

---

[2]  In this opinion, Chief Judge Chambers notes that a Proposed Findings and Recommendation (PF&R) submitted by United States Magistrate Judge Cheryl A. Eifert on August 28, 2014 was amended the following day, August 29, 2014, in light of the Fourth Circuit's decision in *Booker v. South Carolina Dept. of Corrections*, No. 13-2014 WL 4244253 (4th Cir. Aug. 28, 2014).  Judge Eifert's Amended PF&R recommended that Smith's First Amendment retaliation claim be permitted to proceed to trial in light of the decision in *Booker*.  Chief Judge Chambers adopted that finding and recommendation in his September 30, 2014 Memorandum Opinion and Order.

have been proper if taken for different reasons."  517 F. App'x at 150 (citing *American Civil Liberties Union v. Wicomico Cnty.*, 999 F.2d 780, 785 (4th Cir. 1993).

However, to survive summary judgment, the plaintiff must allege "sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the court and show that he suffered more than de minimus inconvenience" to the exercise of his First Amendment rights.  *McFadden*, 517 F. App'x at 150; *Wicomico*, 999 F.2d at 785; *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).  As clarified in *Booker*, whether or not the particular plaintiff's protected speech was curtailed, the district court must also evaluate whether the defendants' actions "would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  583 F. App'x at *44.

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff has failed to prove by any evidence other than his own conclusory allegations that he has been retaliated against for exercising his First Amendment right to access the courts and redress grievances.  Even taking those allegations in the light most favorable to the plaintiff, he has not demonstrated that the defendants' conduct actually had any chilling effect on his ability to seek redress of his grievances, particularly by pursuing legal action in this or any other court, or that the defendants' conduct would likely deter a person of ordinary firmness from exercising those rights.  Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law on the plaintiff's First Amendment retaliation claim.

### C. The plaintiff's supervisory liability claims against defendants Clifford and McCloud also fail as a matter of law.

The defendants' Memorandum of Law asserts that the plaintiff cannot demonstrate that Captains Clifford and McCloud, as supervisors of defendant Blagg, were deliberately indifferent to a substantial risk of serious harm to the plaintiff.  (ECF No. 95 at 18-20).  The defendants' Memorandum of Law addresses this claim under the Fourth Circuit's decision in *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), in which the Court held that a supervisor may be liable for the actions of his subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved, prior constitutional violations.  Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care."  13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).  (ECF No. 95 at 18-19).

The defendants' Memorandum of Law further contends that the plaintiff cannot produce any evidence to demonstrate that any of the defendants have been disciplined as a result of the use of pepper spray, and that any incidents in which pepper spray was used by them were found to be justified.  (*Id.* at 19).  Their Memorandum further states, "[a]ll Defendants have a clean discipline history.  Based upon the foregoing, the Plaintiff will be unable to establish that Capt. McCloud and/or Capt. Clifford were deliberately indifferent to any substantial risk of harm to the Plaintiff.  Therefore it is proper for this Court to enter an Order granting summary judgment in favor of Capt. McCloud and Capt. Clifford."  (*Id.* at 19-20).

The plaintiff's Response asserts that, in addition to claiming that McCloud and Clifford failed to properly supervise Sgt. Blagg, he has also alleged that these defendants failed to take corrective action, failed to protect against the misconduct of Blagg, encouraged the misconduct of Blagg and failed to adequately investigate the misconduct.  (ECF No. 96 at 22).

However, because there is no meritorious Eighth Amendment excessive force claim against defendant Blagg, the plaintiff's allegations of supervisory liability necessarily fail.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and defendants Clifford and McCloud are entitled to judgment as a matter of law on the plaintiff's supervisory liability claims.

### D.  The defendants are entitled to qualified immunity on all of the plaintiff's claims.

The defendants' Motion and Memorandum of Law further argue that the defendants are entitled to qualified immunity on all of the plaintiff's claims made against them.  As noted in the defendants' Memorandum:

> Qualified immunity is designed to protect public officials from the threat of litigation resulting from decisions made in the course of their employment.  *See Clark v. Dunn*, 195 W. Va. 272, 465 S.E.2d 374 (1995). In order to sustain a viable claim against a State agency or its employees or officials acting within the scope of their authority sufficient to overcome this immunity, it must be established that the agency employee or official knowingly violated a clearly established law, or acted maliciously, fraudulently, or oppressively.  *Parkulo v. W. Va. Bd of Probation*, 199 W. Va. 161, 483 S.E.2d 507 (1996).  In other words, the State, its agencies, officials, and employees are immune for acts or omissions arising out of the exercise of discretion in carrying out their duties, so long as they do not violate any known law or act with malice or bad faith.  *Id. Syl. Pt. 8.*

(ECF No. 95 at 16-17).  Although the defendants have cited West Virginia case law, the federal authority on qualified immunity generally applies the same principles,

establishing that "[g]overnment officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998). (*Id.*) The defendants further assert that the general functions of a correctional officer are broadly characterized as discretionary and, thus, are subject to qualified immunity. *Cochran v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 2014 U.S. Dist. LEXIS 89893, *15-16 (S.D. W. Va. July 2, 2014) (quoting *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, No. 13-0037, 2014 W. Va. LEXIS 253, section III(A)(5) (Mar. 27, 2014). Likewise, the supervision, training, hiring and retention of employees are also discretionary functions. (*Id.* at 16-17).

The defendants contend that it is clear that they acted in accordance with controlling WVDOC policies in making the discretionary decision to deploy pepper spray in an effort to gain the plaintiff's compliance. Their Memorandum of Law further states:

> A split-second decision was made in order to control inmates during a mass cell search in the segregation units. As such, Defendants are entitled to qualified immunity for the allegations raised by Plaintiff as he can produce no evidence to rebut qualified immunity.

(*Id.* at 17-18). The plaintiff's Response summarily disagrees with this assertion, and incorporates his prior arguments on his First and Eighth Amendment claims.

Because the undersigned has proposes that the presiding District Judge **FIND** that the plaintiff has not demonstrated the violation of any clearly-established constitutional right by the conduct of the defendants, the undersigned further proposes

that the presiding District Judge **FIND** that the defendants are entitled to qualified immunity on all of the plaintiff's claims.

      **E.**     **The plaintiff's assault and battery claims fail as a matter of law.**

The plaintiff's Amended Complaint also contends that the conduct of the defendants constituted the tort of assault and battery under West Virginia state law. (ECF No. 65 at 14, ¶ 41). Although the defendants did not address this claim in their Memorandum of Law, the undersigned nonetheless proposes that the presiding District Judge **FIND** that the defendants are entitled to judgment as a matter of law on those claims.

The plaintiff's claims of assault and battery are state law claims that are not actionable under section 1983. *See Gray v. Bd. of Cty. Commrs. Of Frederick Cty., Md*, 551 F. App'x 666, 677 (4th Cir. 2014) (a constitutional claim of excess force and a state tort claim of assault and battery are based on distinct legal concepts and foundations). Under West Virginia law, the legal phrase "assault and battery" is used to refer to the tort of battery. *See Smith v. Berlin*, 2014 WL 4929468 *8 (S.D. W. Va. Sept. 30, 2014). The *Smith* decision further enumerates the essential elements of a battery claim, as described in the Restatement (Second) of Torts, § 13 (1965) as follows:

> An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of another or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results.

*See also, Tolliver v. Kroger, Co.*, 498 S.E.2d 702, 710 (W. Va. 1997) (quoting Syl. Pt. 1, *Funeral Services by Gregory, Inc. v. Bluefield Cmty. Hosp.*, 413 S.E.2d. 79 (W. Va. 1991) ("In order to be liable for a battery, actor must act with the intention of causing a

harmful or offensive contact with a person."), overruled on other grounds by *Courtney v. Courtney*, 437 S.E.2d 436 (W. Va. 1993)).

Based upon the undersigned's prior proposed findings that the force used against the plaintiff was used in a good faith effort to restore order, the undersigned further propose that the presiding District Judge **FIND** that the defendants were privileged to use such force and, therefore, as a matter of law, the plaintiff cannot demonstrate that the deployment of pepper spray was done with an intent by the defendants to cause a harmful or offensive contact with the plaintiff in order to successfully state a claim of assault and/or battery.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Motion for Summary Judgment (ECF No. 94) and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the district court and a waiver of appellate review by the circuit court of appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to the plaintiff and to transmit a copy to counsel of record.

 July 30, 2015

Dwane L. Tinsley
United States Magistrate Judge