**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CEDEAL HARPER,

                Plaintiff,

v.                                CIVIL ACTION NO.  2:13-cv-19796

MICHAEL BLAGG, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants Michael Blagg, Margaret Clifford, and James McCloud's Motion for Summary Judgment (the "Motion"). (ECF No. 94.) By its Memorandum Opinion and Order entered on March 18, 2014, the Court referred this action to United States Magistrate Judge Dwane L. Tinsley for submission of proposed findings of fact and recommendations for disposition. (*See* ECF No. 47 at 17.) On July 30, 2015, Magistrate Judge Tinsley filed proposed findings of fact and recommendations for disposition (the "PF&R"), in which he recommends that the Court grant the Motion and dismiss this action. (ECF No. 97.) Plaintiff filed timely objections to the PF&R (the "Objections") on August 14, 2015. (ECF No. 98.)

For the reasons discussed herein, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** the Objections, (*id.*), **ADOPTS** the PF&R, (ECF No. 97), to the extent it is consistent with

1

this Memorandum Opinion and Order, and **GRANTS IN PART** and **DENIES IN PART**
Defendants' Motion, (ECF No. 94).

## I.  Background

This is a civil rights action pursuant to 42 U.S.C. § 1983 brought by an inmate at the Mount
Olive Correctional Complex ("Mount Olive"). Plaintiff is "a prisoner of the State of West Virginia
in the custody of the West Virginia Division of Corrections" (the "DOC") and "is currently
confined in [Mount Olive]." (ECF No. 65 ¶ 2.) Defendants are correctional officers at Mount Olive.
(*See id.* ¶¶ 3–5.) Defendant Blagg holds the rank of sergeant, Defendant Clifford "is a [l]ieutenant,"
and Defendant McCloud holds the rank of captain. (*Id.*)

Correctional officers conducted "a mass cell search in the Quilliams segregation units at
[Mount Olive] on Monday, June 3, 2013 through Friday, June 7, 2013." (ECF No. 95, Ex. B ¶ 4.)
On June 6, 2013, Plaintiff was confined in the Quilliams Two segregation unit at Mount Olive.
(ECF No. 65 ¶ 12; ECF No. 95 at 11.) On this date, Defendants entered the Quilliams Two
segregation unit to conduct part of the mass cell search. (*See* ECF No. 65 ¶ 12.) Plaintiff alleges
that "two [correctional] officers" escorted Plaintiff out of his cell "with his hands cuffed behind
his back and legs shackled together." (*Id.* ¶ 13.) Plaintiff was then "secured to the a [sic] stool."
(ECF No. 95 at 11.)

The record is not clear as to precisely what occurred once Plaintiff was seated on the stool.
Plaintiff provided deposition testimony that he sat on the stool "quietly just waiting to be put back
in [his] cell." (*Id.*, Ex. A at 28:18–19.) Defendant Blagg provided a slightly different account and
stated that Plaintiff began "moving about on the stool he was sitting on," which "caus[ed] the
posted K-9 to become agitated." (*Id.*, Ex. E at 64.)

However, the record is clear that Defendant Clifford gave Plaintiff verbal directions to look at the wall and not move. (ECF No. 65 ¶¶ 16–17; ECF No. 95 at 11; *cf.* ECF No. 65 ¶ 15 (providing Plaintiff's allegation that Defendant "Clifford jumped in front of [Plaintiff] and started yelling look at the wall," while "a container" of pepper spray "was pointed [Plaintiff's] face").) Defendant Clifford then told Defendant Blagg "that if Plaintiff were to move, then Plaintiff was to be sprayed with O.C.," *i.e.* pepper spray. (ECF No. 95 at 11; *see, e.g.*, ECF No. 65 ¶ 17 (providing Plaintiff's averment that, "[w]hile [he] was looking at the wall, [Defendant] Clifford told [Defendant] Blagg to spray [Plaintiff] if [he] moved").)

The parties' accounts again diverge as to what occurred next. Plaintiff alleges that he responded to Defendant Clifford speaking to Defendant Blagg by "turn[ing] his head to see who [Defendant] Clifford was talking to." (ECF No. 65 ¶ 17.) Defendant Blagg, on the other hand, stated that Plaintiff "immediately began fidgeting and looking around the . . . area." (ECF No. 95, Ex. E at 64.) Nonetheless, it is undisputed that Defendant Blagg responded to Plaintiff's movement by administering two bursts of pepper spray at Plaintiff's facial region (the "Disciplinary Event"). (ECF No. 65 ¶ 17; ECF No. 95 at 14.) Following a brief period of time, Defendant Blagg escorted Plaintiff to another area for decontamination. (*See, e.g.*, ECF No. 95, Ex. E at 64; *cf.* ECF No. 65 ¶ 19 (providing Plaintiff's allegation that, following the Disciplinary Event, he sat on the stool "for the next ten or so minutes until [he] was removed from the pod for decontamination").)

Plaintiff also avers that roughly "a minute or so" after the Disciplinary Event and while Plaintiff was still seated on the stool, Defendant McCloud "came over and whispered in [Plaintiff's] ear 'now you can file another lawsuit.'" (ECF No. 65 ¶ 19.) Plaintiff "believes" that the actions of Defendants were a "concerted effort to retaliate against [Plaintiff] for filing [two]

civil actions" in this District: (1) *Harper v. McCloud*, Civil Action No. 2:12-cv-00656 (S.D. W. Va.), "an excessive force case against [Defendant] McCloud and others;" and (2) *Harper v. Dillion*, Civil Action No. 2:12-cv-04751 (S.D. W. Va.), "a suit that includes retaliation claims against [Defendant] McCloud and others." (*Id.* ¶ 24; *see also* ECF No. 95, Ex. A at 40:14–41:5 (constituting Plaintiff's deposition testimony, in which he acknowledges that he does not have any testimony or documents to support his retaliation claims, but that he "think[s] the circumstance[s] would imply that" Defendant McCloud directed, conspired, or encouraged Defendant Blagg to spray Plaintiff with pepper spray in retaliation for Plaintiff's prior lawsuits).)

Plaintiff filed his initial complaint in this Court on July 15, 2013 against Defendants and other individuals.[1] (ECF No. 2.) In its Memorandum Opinion and Order entered on March 18, 2014, the Court dismissed with prejudice all defendants except the remaining Defendants. (ECF No. 47 at 17.)

On April 17, 2014, Plaintiff filed a Motion for Leave to File Supplement and/or Amended Complaint (the "Motion to Amend"), which included an amended complaint. (ECF No. 65.) On May 21, 2014, Magistrate Judge Tinsley granted the Motion to Amend, with the exception that Plaintiff "may not attempt to state new or revised allegations against defendants who have been dismissed with prejudice, or concerning forms of relief that have been dismissed." (ECF No. 74 at 1–2.) As such, the amended complaint included with the Motion to Amend (the "Complaint") is currently the operative complaint in this action. (*See* ECF No. 65 (constituting the operative Complaint).)

---

[1] In his initial complaint, Plaintiff also brought claims against James Rubenstein (the commissioner of the DOC), David Ballard (the warden of Mount Olive), Paul Perry (an associate warden at Mount Olive), and Jason Collins (an associate warden at Mount Olive). (*See* ECF No. 2.)

4

The Complaint includes the following causes of action: (1) an Eighth Amendment excessive force claim against Defendant Blagg pursuant to 42 U.S.C. § 1983,[2] (*id.* ¶ 36); (2) bystander liability claims against Defendants Clifford and McCloud pursuant to Section 1983, (*id.* ¶ 38); (3) supervisory liability claims against Defendants Clifford and McCloud pursuant to Section 1983, (*id.*); (4) First Amendment retaliation claims against all remaining Defendants pursuant to Section 1983,[3] (*id.* ¶¶ 37, 39–40); and (5) common-law battery claims against all remaining Defendants,[4] (*id.* ¶ 41). The Complaint alleges that, as a result of the Disciplinary Event,

---

[2] The Court notes that Defendants appear to interpret the Complaint as alleging excessive force claims against both Defendants Blagg and Clifford. (*See* ECF No. 95 at 15 (arguing that Plaintiff's Eighth Amendment excessive force "causes of action must fail because [Defendant] Clifford and [Defendant] Blagg employed force applied [sic] in a good faith effort to maintain or restore discipline and not maliciously and sadistically for the very purpose of causing harm").) However, the Complaint only provides for such a claim against Defendant Blagg. (*See* ECF No. 65 at 12–15.) The Complaint does allege that "Defendants Clifford and McCloud . . . violat[ed] [Plaintiff's] rights under the Eighth Amendment" by "failing to intervene" and "failing to adequately and properly supervise or discipline the subordinates [sic] misconduct." (*Id.* at 12–13.) The Complaint also includes First Amendment retaliation and common-law battery claims against all three Defendants (*Id.*) The Court therefore construes the Complaint as alleging an excessive force claim only against Defendant Blagg, bystander and supervisory liability claims against Defendants Clifford and McCloud, and First Amendment retaliation and state-law battery claims against all remaining Defendants. *Cf. Shaw v. United States*, Civil Action No. 5:10–cv–00871, 2014 WL 7004852, at *1 (S.D. W. Va. Dec. 10, 2014) ("[F]ilings by pro se litigants are to be given a liberal construction." (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985))).

[3] The Complaint includes the following allegations in its "Legal Claims" section:

> By having knowledge of the pervasive, longstanding and well documented violations of constitutional rights or injuries, excessive force and retaliation against [Plaintiff] and other inmates and (1) failing to take corrective action against the misconduct; (2) allowed the misconduct to continue; (3) encouraging the misconduct; (4) failing to protect against the misconduct; (5) failing to adequately investigate the misconduct; (6) failing to adequately and properly supervise for the misconduct or those who caused the misconduct; (7) failing to adequately discipline those responsible for the misconduct and/or (8) creating the policies or customs that allowed the misconduct, and, thus tacitly authorizing . . . Plaintiff's and other inmates [sic] constitutional violations and injuries, [Defendants] . . . also violating [sic] [Plaintiff's] right under the Eigth [sic] and [F]irst Amendment to the United States Constitution and causing [Plaintiff] pain, suffering and/or emotional distress.

(ECF No. 65 ¶ 42.) In the PF&R, the Magistrate Judge did not construe these allegations as providing an additional and surviving Section 1983 claim. (*See* ECF No. 97.) Plaintiff did not raise an objection to this interpretation. (*See* ECF No. 98.) As such, the Court shall similarly construe these allegations as additional assertions regarding Plaintiff's surviving Section 1983 claims. *See, e.g., Thomas v. Arn*, 474 U.S. 140, 150 (1985) (noting that a court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge "when neither party objects to those findings").

[4] The Court notes that Plaintiff styled his common-law cause of action as an "assault and battery" claim. (ECF No.

5

Plaintiff suffered physical and psychological harm, such as "burning of the face, eyes and private parts," "breathing problems," "sinus problems," "swelling of the face," "humiliation," "embarrassment," "fear," "anxiety," "nightmares," "mood swings," and "bepression [sic]." (*Id.* ¶ 32.) The Complaint requests a wide range of monetary relief, including compensatory and punitive damages for each claim, as well as attorney's fees and costs.[5] (*Id.* ¶¶ 47–54.)

Defendants filed the Motion on November 25, 2014, (ECF No. 94), and Plaintiff filed his opposition to the Motion on December 10, 2014, (ECF No. 96). On July 30, 2015, Magistrate Judge Tinsley filed his PF&R, in which he recommends that the Court grant the Motion, in its entirety, and dismiss this action. (ECF No. 97.) Plaintiff then timely filed the Objections on August 14, 2015. (ECF No. 98.) Thus, the PF&R, the Objections, and the Motion are fully briefed and ready for disposition.

---

65 ¶ 41.) The Court further notes that, in 2014, a proposed finding and recommendation by a magistrate judge that was subsequently adopted by another court in this District provided the following statement regarding the state law claim of "assault and battery": "Under West Virginia law, the legal phrase 'assault and battery' is used to refer to the tort of battery." *Smith v. Berlin*, Civil Action No. 3:12–CV–7358, 2014 WL 4929468, at *8 (S.D. W. Va. Sept. 30, 2014) (M.J., Eifert). The magistrate judge did not cite any authority in support of this proposition. *See id.* Nonetheless, numerous courts in this District subsequently cited to this statement and interpreted claims of "assault and battery" as only battery claims. *See, e.g.*, *Wilson v. Patterson*, Case No. 2:13–cv–22734, 2015 WL 5782344, at *17 (S.D. W. Va. July 30, 2015) (M.J., Tinsley) (citing *Smith*, 2014 WL 4929468, at *8).

The Court finds that there is some merit in this proposition, under certain circumstances. For example, in this case, the battery was allegedly completed by Defendant Blagg and the record is not clear as to whether an assault did, in fact, occur prior to the execution of the battery. The Court therefore interprets Plaintiff's "assault and battery" claim as only a claim for battery. Nonetheless, the Court notes that there may be factual scenarios where an "assault and battery" claim should properly be considered as both a claim for assault and a claim for battery.

5 In the Complaint, Plaintiff also requests extensive and diverse injunctive relief. (*See* ECF No. 65 ¶¶ 44–45.) However, in his May 21, 2014 order granting in part the Motion to Amend, Magistrate Judge Tinsley struck all of Plaintiff's requests for injunctive relief from the Complaint. (ECF No. 74 at 2.) These requests for injunctive relief are thus not included in the currently operative Complaint.

## II.  Legal Standards

### A.  Review of the PF&R

The Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge "when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, the Court need not conduct a de novo review when a petitioner "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Id.* In reviewing those portions of the PF&R to which Plaintiff objected, the Court will consider the fact that Plaintiff is acting pro se and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

### B.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. That rule provides that a court should grant summary judgment if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court must view the evidence "in the light most favorable to"

7

the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Liberty Lobby*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." (citation omitted)).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.  Section 1983 Claims

Defendant objects to the Magistrate Judge's recommendation that the Court grant Defendants' Motion as to Plaintiff's claims pursuant to 42 U.S.C. § 1983. (*See* ECF No. 98 at 1–27.) As discussed below, the Court agrees with Plaintiff's position, but only with regard to one of Plaintiff's Section 1983 claims.

**A.      Applicable Standards**

1.      Requirements of a Section 1983 Claim

Plaintiff brings claims pursuant to 42 U.S.C. § 1983. (*See* ECF No. 65 ¶¶ 36–40.) "Section

1983 is a codification of § 1 of the Civil Rights Act of 1871," *Kalina v. Fletcher*, 522 U.S. 118,

123 (1997), and provides the following, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "The text of [Section 1983] purports to create a damages remedy against every

state official for the violation of any person's federal constitutional or statutory rights." *Kalina*,

522 U.S. at 123. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a

method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271

(1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To maintain a § 1983 action,

[a plaintiff] must show that: (1) he has been deprived of a right secured by the Constitution and

the laws of the United States, and (2) that the defendants deprived him of this right while acting

under 'color of any [law].'" *Tincher v. Fink*, No. Civ. A. 2:03-0030, 2005 WL 1845319, at *3

(S.D. W. Va. Aug. 2, 2005) (second alteration in original) (citation omitted); *see also Jenkins v.

Medford*, 119 F.3d 1156, 1159–60 (4th Cir. 1997) ("Under 42 U.S.C. § 1983, a plaintiff must

establish three elements to state a cause of action: (1) the deprivation of a right secured by the

Constitution or a federal statute; (2) by a person; (3) acting under color of state law.").

2.      Qualified Immunity for Section 1983 Claims

Defendants argue, in part, that Plaintiff's Section 1983 "claims are barred against all

Defendants by the [d]octrine of [q]ualified [i]mmunity."[6] (ECF No. 95 at 16–18.) "Under the doctrine of qualified immunity, a government official is not personally liable for damages resulting from his actions if his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *West v. Murphy*, 771 F.3d 209, 213 (4th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity takes cognizance of human imperfections." *Id.* "Implicit in the idea that officials have some immunity . . . for their acts, is a recognition that they may err and that it is better to risk some error and possible injury from such error than not to decide or act at all." *Id.* "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

"In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry." *Tolan v. Cotton*, 134 S. Ct. 1861, 1865 (2014). "The first asks whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]'" *Id.* (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 1866 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Under the second prong, "'[w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action

---

[6] In their discussion regarding qualified immunity, Defendants cite cases analyzing qualified immunity under West Virginia law. (*See* ECF No. 95 at 16–17.) However, *federal* qualified immunity doctrine applies to Section 1983 claims. *See, e.g.*, *Marks v. Dann*, 600 F. App'x 81, 86 (4th Cir. 2015). The Court therefore construes Defendants' arguments that they are protected from Plaintiff's Section 1983 claims by qualified immunity as invoking the federal doctrine of qualified immunity.

generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012). Stated another way, "'[t]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan*, 134 S. Ct. at 1866 (alterations in original) (quoting *Hope*, 536 U.S. at 741); *see also West*, 771 F.3d at 213 ("The law is clearly established if 'the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011))). "Existing precedent must have placed the statutory or constitutional question beyond debate." *West*, 771 F.3d at 213 (citation omitted). However, "[t]he universe of existing precedent is not unlimited." *Id.* "Courts 'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit] [C]ourt of [A]ppeals, and the highest court of the state in which the case arose.'" *Id.* (quoting *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012)).

"Courts have discretion to decide the order in which to engage [the] two prongs" of the qualified-immunity analysis. *Tolan*, 134 S. Ct. at 1866 (citing *Pearson*, 555 U.S. at 236). "But under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* (citations omitted).

**B.     Eighth Amendment Excessive Force Claim Against Defendant Blagg**

Plaintiff first objects to the Magistrate Judge's recommendation that this Court grant Defendants summary judgment on Plaintiff's Eighth Amendment excessive force claim against Defendant Blagg. (*See* ECF No. 98 at 4–19.) The Court concurs with Plaintiff's position and declines to adopt the Magistrate Judge's recommendation as to this claim.

11

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." U.S. Const., amend. VIII. "The Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . , against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation omitted). "In the prison context, it 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "The Eighth Amendment [thus] places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).

"An inmate's Eighth Amendment claim involves a subjective component and an objective component." *Iko*, 535 F.3d at 238; *see, e.g.*, *Williams*, 77 F.3d at 761 ("Determination of whether the Eighth Amendment has been violated requires analysis of subjective and objective components." (citing *Wilson v. Seiter*, 501 U.S. 294, 302 (1991))). "Specifically, Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams*, 77 F.3d at 761. *See generally Tedder v. Johnson*, 527 F. App'x 269, 272 (4th Cir. 2013) ("The objective component focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010))). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

Under the subjective inquiry, "[t]he state of mind required in excessive force claims is 'wantonness in the infliction of pain.'" *Iko*, 535 F.3d at 239 (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)). "Put differently, the 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7).

"The Supreme Court has set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with 'wantonness': (1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley*, 475 U.S. at 321). "'[T]he extent of injury suffered by an inmate is [a] factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation' . . . ," as well as "provide some indication of the amount of force applied." *Wilkins*, 559 U.S. at 37 (first alteration in original) (quoting *Hudson*, 503 U.S. at 7); *see, e.g.*, *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (providing "the extent of the injury inflicted" as one of the relevant factors courts should consider "[i]n determining whether a prison official has acted with wantonness in the infliction of pain" (citation omitted)).

Regarding the first *Whitley* factor—the need for the application of force—the Court finds that there are genuine issues of material fact regarding whether force was warranted. It is undisputed that Defendant Clifford instructed Plaintiff not to move and that Plaintiff disobeyed this command. (*See, e.g.*, ECF No. 65 ¶ 17; ECF No. 95, Ex. E at 64.) However, the record taken

in a light most favorable to Plaintiff indicates that Plaintiff disobeyed this command to only a limited degree by turning his head in response to Defendant Clifford speaking behind him. (*See, e.g.*, ECF No. 95, Ex. A at 29:16–17 (providing Plaintiff's deposition testimony that he "turned to see who [Defendant Clifford] was talking to, and [Defendant Blagg] shot [him]").) Additionally, there is no indication in the record that Plaintiff presented any form of threat to Defendants, himself, or any other individual. Plaintiff was seated outside his cell, both his hands and his feet were shackled, and Plaintiff did not make any comments or physical actions that were hostile towards Defendants or any other individual. (*See, e.g.*, ECF No. 95 at 11 ("Plaintiff was removed from his cell and secured to the a [sic] stool . . . .").) This record—construed in the light most favorable to Plaintiff—creates genuine issues of material fact as to whether any application of force was needed, whatsoever, to respond to Plaintiff's limited failure to obey the order not to move. *See, e.g.*, *Glascoe v. Sowers*, Civil Action No. ELH–11–2228, 2013 WL 5330503, at *6 (D. Md. Sept. 20, 2013) ("Eighth Amendment violations have . . . been found when a chemical agent was used without a prior verbal command, or after a prisoner had been subdued or had become compliant with an officer's instructions." (citations omitted)); *cf. Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002) (finding that "the evidence does not show an objective need for the force which was used" where the record indicated, in part, that the inmate plaintiff "did not intentionally disobey [the defendant correctional officer], use profanity or abusive language, or threaten any correctional officer, and that [the plaintiff] was sprayed [with pepper spray] without warning, thrown down to the floor, and handcuffed").

Defendants argue that the Disciplinary Event occurred in the context of a disturbance that created a need for the application of force. (*See, e.g.*, ECF No. 95 at 11–12.) Undoubtedly, the

14

surrounding circumstances are vitally important when considering this first factor, as with all of the *Whitley* factors. *See, e.g.*, *Mann v. Scott*, Civil Action No. 0:14–3474–RMG, 2015 WL 5165198, at *5 (D.S.C. Sept. 1, 2015) ("Use of chemical munitions on prisoners may or may not constitute excessive force, and the *Whitley* factors depend on the circumstances surrounding the application of the chemical munitions and any treatment and decontamination following." (citations omitted)). "Officials are entitled to use appropriate force to quell prison disturbances." *Williams*, 77 F.3d at 761. "[I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials . . . must take into account the very real threats the unrest presents to inmates and prison officials alike, in addition to the possible harms to inmates against whom force might be used." *Whitley*, 475 U.S. at 320; *see also Hudson*, 503 U.S. at 6 ("Whether the prison disturbance is a riot or a lesser disturbance, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates."). "Both situations may require prison officials to act quickly and decisively." *Hudson*, 503 U.S. at 6. "Likewise, both implicate the principle that '[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Whitley*, 475 U.S. at 321–22).

Defendants argue that Defendant Blagg used pepper spray on Plaintiff during a disturbance in the segregation unit—namely, "[a] mass cell search . . . to recover contraband such as weapons from the possession of inmates." (ECF No. 95 at 11.) It is far from clear based on the record whether this mass cell search created any form of disturbance at the time of the Disciplinary Event. It is uncontroverted that Defendants removed Plaintiff from his cell in the context of a search of

the cells in the segregation unit. (*See, e.g.*, ECF No. 65 ¶ 12; ECF No. 95 at 11–12.) However, this mass cell search in the segregation units spanned a period of five days. (*See* ECF No. 95, Ex. B ¶ 4 (constituting the affidavit of Major Robert Rhodes, in which he states that the "mass cell search in the Quilliams segregation units at [Mount Olive]" occurred "on Monday, June 3, 2013 through Friday, June 7, 2013").) The record provides no indication that—at the time of the Disciplinary Event—any other inmates were out of their cells, or that there was otherwise a lack of order or discipline in the segregation unit.[7]  In addition, Robert Rhodes, a major "stationed at [MOCC]" and "the highest ranking uniformed officer in the West Virginia Department of Correction," submitted an affidavit in which he notes that "[a]ny force used against [Plaintiff] in relation to this lawsuit . . . was not as the result of a cell search." (ECF No. 95, Ex. B ¶¶ 1–2, 6.) Instead, Major Rhodes stated that Plaintiff's "actions after removal [from his cell] were the cause of any force used against him." (*Id.* ¶ 6.) This statement indicates that Plaintiff's actions—*not* the surrounding circumstances—were the sole basis for the Disciplinary Event. (*See id.*) Given this available record, there remain genuine issues of material fact as to whether Defendant Blagg's use of pepper spray on Plaintiff based on his non-threatening failure to obey Defendant Clifford's instructions not to move occurred in the context of a disturbance. *Cf. Hudson v. McMillian*, 503 U.S. 1, 6 (1992) ("Whether the prison disturbance is a riot or a lesser disturbance, corrections officers must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates.").

---

[7] Defendants argue that there was a need "to restore order to the segregation units" because "thirty-two . . . make-shift weapons were confiscated within the [segregation] units." (ECF No. 95 at 11.) The results of this five-day search do not indicate that, at the time of the Disciplinary Event, there was a lack of order or discipline. Defendants' argument amounts to a *post hoc* basis to assert a lack of order which, based on the record presently before the Court, is not clear existed at the time of the Disciplinary Event.

The Court similarly finds that questions of material fact remain as to the second *Whitley* factor—the relationship between the need for the application of force and the amount of force that was used—for several reasons. First, as there are genuine issues of material fact regarding whether any force was needed, at all, there are similarly issues of fact as to whether Defendant Blagg used an unnecessary amount of force. *See, e.g.*, *Tedder v. Johnson*, 527 F. App'x 269, 273 (4th Cir. 2013) ("[B]ecause the facts, viewed in [the plaintiff's] favor, permit the conclusion that no force was necessary at all, the *Whitley* 'amount of force' factor favors [the plaintiff] as well.").

Second, the record taken in the light most favorable to Plaintiff indicates that Plaintiff's hands and feet were shackled, (ECF No. 65 ¶ 13), he was secured to a stool, (ECF No. 95 at 11), and—other than a movement of his head in response to Defendant Clifford speaking behind him—Plaintiff was both passive and docile, (*see, e.g.*, *id.*, Ex. A at 35:9–12 (providing Plaintiff's deposition testimony that his head movement "was more like a reaction" and that he "kind of slightly turned [his] head")). Precedent from the Fourth Circuit "establishes that the use of pepper spray on a docile prisoner could qualify as excessive force." *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (citations omitted); *see also Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (finding that the facts "tend[ed] to show that the amount of force used was disproportionate to the need for force" where, in part, defendant used pepper spray on the plaintiff even though he "remained docile and passive"—although potentially noncompliant—throughout a "cell extraction"). *See generally Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) ("It is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." (citations omitted)). The Court finds that there are genuine issues of material fact as to

17

whether Plaintiff was passive and docile—including in turning his head—before the Disciplinary Event. If Plaintiff was passive and docile, then there are similarly genuine issues of material fact as to whether Defendant Blagg applied excessive force by utilizing pepper spray against Plaintiff. *See, e.g.*, *Boone*, 583 F. App'x at 176 ("[T]he use of pepper spray on a docile prisoner could qualify as excessive force." (citations omitted)); *cf. id.* ("[I]f a jury were to believe [the plaintiff's] allegation that he was on the ground, already restrained in handcuffs when [the defendant correctional officer] deployed the pepper spray, the jury could conclude that [the plaintiff] was subjected to unconstitutionally excessive force.").

Third, the DOC's policy directive on less-lethal uses of force—directive number 312.02—may not support Defendant Blagg's employment of pepper spray under the circumstances. As this Court recently stated when addressing this same policy directive, "compliance with . . . [p]olicy [d]irectives may in certain circumstances be instructive on whether [d]efendants acted in good faith and whether they are entitled to qualified immunity." *Harper v. McCloud*, Civil Action No. 2:12–cv–00656, 2014 WL 1159129, at *21 (S.D. W. Va. Mar. 21, 2014). Indeed, correctional policy directives "establish goals recommended by the organization in question," *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979), and constitute "a resource that offers analogous guidance for a correctional officer's measured response" to certain situations, *Harper*, 2014 WL 1159129, at *22. However, policy directives "do not . . . establish constitutional minima" and a correctional officer's "variance" from policy directives "does not *per se* establish a violation of [an inmate's] constitutional rights." *Id.* at *21 (citation omitted).

Policy Directive 312.02 is a DOC "directive applicable to [Mount Olive]." *Id.* at *22. This policy directive "delineates appropriate guidelines concerning the use of physical, less-lethal force

by division personnel," including correctional officers. (ECF No. 95, Ex. D at 1.) This policy directive provides for a "force continuum," which is "[a] model to assist staff in designating appropriate conduct when selecting a level of control for use on a resisting inmate." (*Id.*) This "force continuum . . . is based on the One Plus One Theory and is reactive in nature, which teaches the officers to respond to a specific level of resistance with the appropriate level of control." (*Id.* at 2.)

Policy Directive 312.02 provides the following five "levels of control" in response to resistance by an inmate: (1) "[o]fficer [p]resence;" (2) "[v]erbal [d]irection;" (3) "[i]ntermediate [c]ontrol [t]actics [s]oft;" (4) "[i]ntermediate [c]ontrol [t]actics [h]ard;" and (5) "[u]se of [d]eadly [f]orce." (*Id.* at 5–8.) A correctional officer's use of their "personally carried chemical agent" is an intermediate control tactics soft level of control. (*Id.* at 6.) "Intermediate [c]ontrol [t]actics [s]oft is a level of control used for any level of resistance by an inmate when lower levels of control have failed or been deemed unsafe to attempt." (*Id.*)

In this case, the record indicates that Plaintiff failed to obey Defendant Clifford's instructions not to move by turning his head. (*See, e.g.*, ECF No. 65 ¶¶ 16–17; ECF No. 95 at 11.) However, there is no indication in the record that Plaintiff's slight movement threatened Defendants or any other individuals. (*See* ECF No. 95.) A trier of fact may find that Plaintiff's slight movement was only a natural reaction to a voice behind him, and not any form of resistance whatsoever. Nonetheless, Defendant Blagg chose to immediately employ the third level of control—intermediate control tactics soft—by employing pepper spray without first providing an additional verbal direction to Plaintiff. Defendant Blagg's action in employing pepper spray therefore may not have comported with the express direction of the use of non-lethal force

19

provided in Policy Directive 312.02. (*See* ECF No. 95, Ex. D at 6 ("Intermediate [c]ontrol [t]actics [s]oft is a level of control used for any level of resistance by an inmate when lower levels of control have failed or been deemed unsafe to attempt.").) As previously noted, Policy Directive 312.02 is only a resource and Defendant Blagg's failure to follow this policy directive would not establish a *per se* constitutional violation. *See Harper*, 2014 WL 1159129, at *21 (stating that policy directives "do not . . . establish constitutional minima" and a correctional officer's "variance" from policy directives "does not *per se* establish a violation of [an inmate's] constitutional rights" (citations omitted)). Nonetheless, this policy directive is instructive and indicates that Defendant Blagg employed a level of force that may have been inappropriate under the circumstances. *See, e.g.*, *id.* (noting that "compliance with . . . [p]olicy [d]irectives may in certain circumstances be instructive on whether [d]efendants acted in good faith and whether they are entitled to qualified immunity"). *See generally Bell*, 441 U.S. at 547 ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."). As such, whether Defendant Blagg's use of force complied with Policy Directive 312.02 is itself a question of fact.

For these reasons, the Court finds that there are numerous genuine issues of material fact as to whether Defendant Blagg used an amount of force that was commensurate with the need for the application of force. The second *Whitley* factor therefore weighs in favor of denying summary judgment as to Plaintiff's excessive force claim against Defendant Blagg.

The Court similarly finds that the third *Whitley* factor—the extent of any reasonably perceived threat that the application of force was intended to quell—presents genuine issues of

material fact. In considering this third factor, "the undisputed history of Plaintiff is relevant."
*Harper*, 2014 WL 1159129, at *22. Plaintiff stated in his deposition that he "received write ups"
for misbehavior on "[a]pproximately 17" occasions, including "[a]t least four [or] five" times "for
refusing an order," once "for assaultive behavior," once "for allegedly exposing [his] penis to a
female officer," and once for possession of a pornographic magazine. (ECF No. 95, Ex. A at
19:16–21:13.) As Defendants note, this Court also previously detailed Plaintiff's turbulent history
in the context of another Section 1983 action initiated by Plaintiff and involving an excessive force
claim against correctional officers, including Defendant McCloud. *See Harper*, 2014 WL
1159129, at *22–23. The Court provided the following lengthy discussion regarding Plaintiff's
history:

> Plaintiff is an inmate in a maximum-security facility. He is serving a
> sentence of fifteen years to life for first-degree murder. Plaintiff, originally from
> Detroit, Michigan, relocated to Huntington, West Virginia in April 2004 for the
> purpose of "drug dealing." The murder for which Plaintiff was convicted occurred
> in Huntington, West Virginia. The exact date of the murder is not a part of the
> record, but Plaintiff was sentenced for that crime by the Circuit Court of Cabell
> County, West Virginia in April 2006.
>     In addition to serving a lengthy sentence for a violent crime, Plaintiff has a
> history of violating prison rules. Following his arrest for the murder, Plaintiff was
> temporarily housed in state jail facilities and later transferred in February 2008 to
> [Mount Olive]. Plaintiff has a record of misbehavior while he has been in the
> custody [of] West Virginia detention facilities. More particularly, in 2007 Plaintiff
> was "written up" on two occasions, one for "insubordination" and the other for
> fighting. In 2008, Plaintiff was found guilty of refusing an order. In 2010, he was
> found guilty of exposing his penis to a female correctional officer at Mt. Olive.
>     Plaintiff has spent, by his estimation, "probably half" of his time in prison
> in the segregation unit of [Mount Olive].

*Id.* Given this long and turbulent history of violent and disruptive behavior, the Court finds—as it
did in *Harper*—that Defendants "had good cause to approach Plaintiff with particular care and

good reason to expect that Plaintiff, assuming he could hear them, would likely not readily accede to their orders." *Id.* at *23.

Nonetheless, as previously discussed at length, the record presents questions as to whether Defendant Blagg reasonably perceived any form of threat from Plaintiff—who was shackled at both the hands and feet and secured to a stool—immediately prior to the Disciplinary Event. The record construed in the light most favorable to Plaintiff thus indicates that Plaintiff has a turbulent history that would justifiably make Defendant Blagg wary, but that he also did not present any threat at the time of the Disciplinary Event. The Court therefore finds that genuine issues of material fact exist regarding the third *Whitley* factor.

The Court also finds that there are genuine issues of material fact as to the fourth *Whitley* factor—any efforts made to temper the severity of a forceful response. As Defendants note, the record does reflect that Defendant Blagg responded to Plaintiff's movement in a comparatively tempered manner. (*See* ECF No. 95 at 14.) In particular, Defendant Blagg utilized pepper spray, rather than a stronger type of force. (*See, e.g.*, *id.*) Additionally, Defendants sent Plaintiff to be decontaminated shortly after the Disciplinary Event. (*See, e.g.*, ECF No. 65 ¶ 19.) Courts have routinely found that similar facts are indicative of a tempered response to noncompliance by inmates. *See, e.g.*, *Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) ("[P]rompt washing of the maced area of the body will usually provide immediate relief from pain. Furthermore, because a limited use of mace constitutes a relatively 'mild' response compared to other forms of force, the initial application of [a chemical agent] indicates a 'tempered' response by . . . prison officials." (citation omitted)); *Mann v. Scott*, Civil Action No. 0:14–3474–RMG, 2015 WL 5165198, at *5 (D.S.C. Sept. 1, 2015) ("Courts have found that the question of whether a prisoner was sufficiently

decontaminated following the use of pepper spray or mace is a significant factor in upholding the use of mace." (citations omitted)); *Harper*, 2014 WL 1159129, at *23 (finding that the record indicated that Defendant McCloud tempered his response where, in part, he "elected to use pepper spray rather than more forceful measures such as prodding Plaintiff with a [t]aser or blasting him with a beanbag from a shotgun").

However, as discussed at length above, there remains genuine issues of material fact as to whether the application of any force, whatsoever, was needed in this situation. If no force was needed at all, then Defendant Blagg's choice to utilize pepper spray was not indicative of an effort to temper the severity of a forceful response. *See, e.g.*, *Tedder v. Johnson*, 527 F. App'x 269, 273 (4th Cir. 2013) (stating that the tempered-response *Whitley* factor was "of no significant value to" the defendant correctional officer where no amount of mace "was required at all to force compliance from an inmate who was already complying and unable to resist"); *Treats v. Morgan*, 308 F.3d 868, 874 (8th Cir. 2002) (finding that there were questions as to whether any amount of "force was reasonable" and stating that "[t]he use of force . . . would have been tempered if [the defendant correctional officer] had followed the . . . regulation requiring him to warn [the inmate plaintiff] before spraying him with capstun, giving him another chance to comply"). The Court therefore finds that there are genuine issues of material fact as to whether Defendant Blagg engaged in efforts to temper the severity of his forceful response to Plaintiff's limited noncompliance with Defendant Clifford's orders not to move.

For the reasons discussed above, the Court finds that each of the *Whitley* factors presents genuine issues of material fact as to whether Defendant Blagg acted with the subjective intent necessary to sustain an Eighth Amendment excessive force claim—the malicious and sadistic use

of force to cause harm.[8] It is not the role of the Court to resolve these issues at the summary judgment stage. Instead, these issues are properly left to the decider of fact. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

The Court now turns to the objective inquiry of an excessive force claim, which "focuses not on the severity of any injuries inflicted, but rather on 'the nature of the force,' which must be 'nontrivial.'" *Tedder*, 527 F. App'x at 272 (quoting *Wilkins v. Gaddy*, 559 U.S. 34 (2010)); *see, e.g.*, *Wilkins*, 559 U.S. at 37 ("The 'core judicial inquiry' . . . [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))). "This is not to say that the 'absence of serious injury' is irrelevant to the Eighth Amendment inquiry." *Wilkins*, 559 U.S. at 37 (2010) (quoting *Hudson*, 503 U.S. at 7). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9 (citation omitted). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of

---

[8] The Court notes that some courts analyze the extent of an inmate's injuries as a separate factor under the *Whitley* factor analysis. *See, e.g.*, *Harris v. Kinder*, Civil Action No. 2:13–10803, 2015 WL 631291, at *11 (S.D. W. Va. Feb. 12, 2015) (citations omitted); *cf. Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied." (alteration in original) (citation omitted)). The record indicates that Plaintiff's varied physical injuries were temporary. (*See, e.g.*, ECF No. 95, Ex. A at 46:11–47:7.) As such, insofar as the extent of Plaintiff's injuries may be considered a separate factor, this factor weighs in favor of Defendants. *See, e.g.*, *Harper v. McCloud*, Civil Action No. 2:12–cv–00656, 2014 WL 1159129, at *22 (S.D. W. Va. Mar. 21, 2014) (analyzing the extent of the plaintiff's injury as a separate *Whitley* factor and finding that "[t]he undisputed evidence is that any injuries were temporary and this factor is unhelpful to [the plaintiff]"). However, as discussed above, there remain genuine issues of material fact as to the other *Whitley* factors and the balance of these factors weighs in favor of denying summary judgment as to Plaintiff's Eighth Amendment excessive force claim against Defendant Blagg.

physical force, provided that the force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). As such, "[a]n inmate who complains of a 'push or shove' that causes no discernable injury almost certainly fails to state a valid excessive force claim." *Wilkins*, 559 U.S. at 38 (quoting *Hudson*, 503 U.S. at 9).

Nonetheless, "[i]njury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts." *Id.*; *see also Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) ("[T]he nature of the force, rather than the extent of the injury, is the relevant inquiry."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9 (citation omitted). "This is true whether or not significant injury is evident." *Id.*; *see also Parker v. Stevenson*, --- F. App'x ---, 2015 WL 5573711, at *2 (4th Cir. Sept. 23, 2015) ("As the Supreme Court held in *Wilkins*, there is no 'significant injury' threshold to sustain an excessive force claim because a de minimis injury, if the product of malicious and sadistic use of force, can sustain the claim." (citing *Wilkins*, 559 U.S. at 37–38)).

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 7 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). This inquiry "is not nearly as demanding" as the subjective analysis. *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014). *See generally Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) ("Although an inmate asserting an excessive force claim is . . . required to meet [a] *more* demanding standard with regard to the subjective component of Eighth Amendment analysis, the objective component of an excessive force claim is *less* demanding than that necessary for conditions-of-confinement or inadequate medical care claims.").

In this case, Plaintiff alleges—and Defendants do not contest—that he suffered the following physical symptoms as a result of the Disciplinary Event: "(1) burning of the face, eyes and private parts; (2) [b]reathing problems; (3) sinus problems; [and] (4) swelling of the face." (ECF No. 65 ¶ 32; *see also id.* (providing Plaintiff's allegations that he also suffered adverse psychological reactions due to the Disciplinary Event, such as "humiliation," "embarrassment," "fear," "anxiety," "nightmares," "mood swings," and "bepression [sic]").) Courts previously found that similar adverse physical reactions to pepper spray or other chemical munitions were sufficient to create genuine issues of material fact as to the objective inquiry of an excessive force claim. *See, e.g.*, *Tedder v. Johnson*, 527 F. App'x 269, 274 (4th Cir. 2013) (concluding that the plaintiff "created a genuine issue of material fact on the objective component of his Eighth Amendment excessive force claim" where his "adverse physical reactions to the pepper spray—gagging, breathing difficulty, and vomiting—establishe[d] that the nature of the force [the defendant correctional officer] used against [him] was nontrivial"); *Blount v. Farmer*, No. 7:14CV00418, 2015 WL 4404810, at *3 (W.D. Va. July 17, 2015) (denying the defendant correctional officer's motion for summary judgment as to the objective inquiry of the excessive force claim where the plaintiff stated in a verified complaint and affidavit "that the pepper spray caused coughing, sneezing, excessive mucus, and a painful burning sensation on his skin that lasted for a whole day"). *See generally Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("Pepper spray is designed to disable a suspect by causing intense pain, a burning sensation that causes mucus to come out of the nose, an involuntary closing of the eyes, a gagging reflex, and temporary paralysis of the larynx. It sometimes also causes disorientation, anxiety, and panic in the person sprayed." (citations omitted)), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009), *as*

recognized in *Skelly v. Okaloosa Cty. Bd. of Cty. Comm'rs*, 456 F. App'x 845, 847 (11th Cir. 2012). The Court similarly finds that the evidence in the record regarding Plaintiff's adverse physical reactions to the Disciplinary Event creates genuine issues of material fact as to whether the nature of the force Defendant Blagg employed—pepper spray—was nontrivial and correspondingly satisfies the objective inquiry of an excessive force claim. *Cf. Tedder*, 527 F. App'x at 272 (stating that, in order to satisfy the objective inquiry, "the nature of the force . . . must be nontrivial" (citation omitted)).

The Court thus finds that there are genuine issues of material fact as to both the subjective and objective inquiries for an Eighth Amendment excessive force claim. These issues are properly left to a jury.

Defendants nonetheless argue that summary judgment is appropriate as to this claim because Defendant Blagg is protected by the doctrine of qualified immunity. (*See* ECF No. 95 at 16–18.) "In deciding whether a defendant is entitled to qualified immunity" for an excessive force claim, "[courts] examine (1) whether the facts illustrate that [the defendant] violated [the plaintiff's] constitutional right to be free from excessive force; and (2) if so, whether [the defendant's] conduct was objectively reasonable in view of the clearly established law at the time of the alleged event." *Hill*, 727 F.3d at 321 (citing *Orem v. Rephann*, 523 F.3d 442, 445 (4th Cir. 2008)). Regarding the first prong, the Court previously found that there are genuine issues of material fact as to whether Defendant Blagg violated Plaintiff's constitutional right to be free from excessive force.

As to the second prong, the Fourth Circuit has repeatedly held that "[i]t is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas

27

*or other chemical agents in quantities greater than necessary* or for the sole purpose of infliction of pain." *Iko v. Shreve*, 535 F.3d 225, 240 (4th Cir. 2008) (alterations in original) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). The Court therefore finds that Plaintiff's "right to be free from excessive use of pepper spray was clearly established" at the time of the Disciplinary Event. *Id.*; *cf. Tedder*, 527 F. App'x at 274 (finding that the defendant correctional officer—who used pepper spray on an inmate—"cannot claim qualified immunity because malicious and sadistic use of force for the very purpose of causing pain is always in violation of clearly established law" and "is not an incorrect guess in a gray area of the law" (citation omitted)).

Furthermore, the Court finds that there are genuine issues of material fact as to whether Defendant Blagg's conduct in utilizing pepper spray was objectively reasonable. As discussed at length above, the record may be interpreted as indicating that Plaintiff failed to conform to Defendant Clifford's orders only to a limited extent by turning his head, and that he was otherwise docile and presented no threat to himself or others. There are thus genuine issues of material fact as to whether Defendant Blagg's use of pepper spray—or any amount of force—on Plaintiff was objectively reasonable. *See, e.g.*, *Hinojos v. Bowers*, No. 2:14–cv–01800–DCN, 2015 WL 4878812, at *8 (D.S.C. Aug. 14, 2015) ("[T]he court holds that there is a genuine issue of material fact as to whether [the defendant correctional officer] used excessive force against [the plaintiff]; therefore, the court cannot determine at the summary judgment phase that [the defendant's] actions were objectively reasonable for purposes of granting qualified immunity." (citation omitted)). Under such circumstances, Defendant Blagg is precluded from an award of qualified immunity at the summary judgment stage of this litigation. *See, e.g.*, *Pevia v. Shearin*, Civil Action No. ELH–13–2912, 2015 WL 629001, at *12 (D. Md. Feb. 10, 2015) (denying the defendants' motion for

28

summary judgment on qualified immunity grounds where, in part, there remained pertinent determinations as to whether the defendants' application "of pepper spray on an inmate handcuffed and held within a secure booth" was justified).

In summary, the Court finds that there are genuine issues of material fact as to whether (1) Plaintiff may satisfy the elements of his Eighth Amendment excessive force claim against Defendant Blagg; and (2) Defendant Blagg is entitled to qualified immunity as to this claim. The Court therefore **SUSTAINS** Plaintiff's Objections as to this claim and **DENIES** Defendants' Motion, insofar as it requests summary judgment on Plaintiff's Eighth Amendment Claim against Defendant Blagg.

## C.    Bystander Liability Claims Against Defendants Clifford and McCloud

Plaintiff next argues that summary judgment is inappropriate as to the bystander liability claims against Defendants Clifford and McCloud, which are premised on their failure to intervene in Defendant Blagg's alleged violation of Plaintiff's Eighth Amendment rights. (*See, e.g.*, ECF No. 98 at 18.) The Court disagrees.

As a general rule, an "officer may incur § 1983 liability only through affirmative misconduct." *Randall v. Prince George's Cty., Md.*, 302 F. 3d 188, 202 (4th Cir. 2002) (citation omitted). "Although personal liability premised on an omission is a disfavored concept, it is well-established that an omission to act, when coupled with a duty to act, may provide a basis for liability." *Id.* at 203. An "officer may not stand by idly while a citizen's constitutional rights are violated by another officer; he has an affirmative duty to intercede on the citizen's behalf." *Browning v. Snead*, 886 F. Supp. 547, 552 (S.D. W. Va. 1995) (citations omitted). The Fourth Circuit thus "recognizes a cause of action for bystander liability 'premised on a[n] . . . officer's

29

duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'"
*Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416–17 (4th Cir. 2014) (quoting *Randall*,
302 F.3d at 203). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if
he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a
reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204.
*See generally Bacon v. Wood*, --- F. App'x ---, No. 15–6073, 2015 WL 3973946, at *2 (4th Cir.
July 1, 2015) (citing to this analysis for a bystander liability cause of action when discussing the
inmate plaintiff's "deliberate indifference claim" against correctional officers (citing *Stevenson*,
743 F.3d at 417)); *Morrison v. Jordan*, Civil Action No. 7:08–cv–00643, 2009 WL 4363922, at
*5 (W.D. Va. Dec. 1, 2009) (providing similar elements in the context of a bystander liability claim
by a prison inmate against a correctional officer); *Richardson v. Bostick*, No. 5:11–CT–3045–FL,
2013 WL 6191064, at *4 (E.D.N.C. Nov. 26, 2013) (same).

Plaintiff's bystander liability claims clearly fail under the second element of this
analysis—whether Defendants Clifford and McCloud had a reasonable opportunity to prevent the
harm to Plaintiff. The record reflects that Defendant Blagg administered two bursts of pepper spray
into Plaintiff's facial region without warning. (*See, e.g.*, ECF No. 65 ¶ 17.) The record does not
indicate that there was any period of time between these bursts of pepper spray that would provide
a reasonable opportunity for Defendants Clifford or McCloud to prevent further harm to Plaintiff.
(*See, e.g.*, ECF No. 95, Ex. A at 29:16–19 (providing the following deposition testimony from
Plaintiff: "I turned to see who [Defendant Clifford] was talking to, and [Defendant Blagg] shot
me. He just shot me. Shot me -- shot me in the face twice and told me to look at the floor.").)
Additionally, the record indicates that Defendant Blagg took Plaintiff for decontamination shortly

after the Disciplinary Event. (*See, e.g.*, ECF No. 65 ¶ 19). As such, Defendants Clifford and McCloud did not leave Plaintiff to suffer the physical consequences of Defendant Blagg's allegedly unconstitutional conduct without ameliorating treatment. *Cf. Glascoe v. Sowers*, Civil Action No. ELH–11–2228, 2013 WL 5330503, at *6 (D. Md. Sept. 20, 2013) ("[C]ourts have concluded that the Eighth Amendment can be violated when, after a prisoner is pepper sprayed (even for a legitimate reason), officers then withhold appropriate medical attention." (citations omitted)). The Court therefore finds that Defendants Clifford and McCloud did not have a reasonable opportunity to prevent the allegedly unconstitutional harm to Plaintiff. Absent such opportunity, Plaintiff's bystander liability claims against Defendants Clifford and McCloud fail. *See, e.g.*, *Randall*, 302 F.3d at 204 (providing that one element of a bystander liability claim is that the defendant officer "ha[d] a reasonable opportunity to prevent the harm"); *see also N.C. ex rel. Hailey v. Westmoreland*, 267 F. Supp. 2d 497, 502 (M.D.N.C. 2003) (finding that the defendant officer did not have a reasonable opportunity to prevent harm to the plaintiff where another officer's act in striking the plaintiff occurred, if it all, "without warning" and in a "very brief" time period); *Dukes v. Richards*, No. 5:06–CT–3094–D, 2009 WL 9056101, at *6 (E.D.N.C. Aug. 27, 2009) (granting summary judgment on a bystander liability claim where the testimony in the record indicated that "even if [the defendant officer] was standing next to [the plaintiff] during the alleged incident, [the defendant] would not have had a reasonable opportunity to prevent some other officer's sudden decision to kick [the plaintiff]"); *cf. Haynes v. City of Durham, N.C.*, No. 1:12cv1090, 2014 WL 2864470, at *5 (M.D.N.C. June 24, 2014) (denying the motion to dismiss where the complaint alleged that the defendant officers "had a reasonable opportunity to prevent

the harm" because "the alleged incidents took place over several hours" and the defendants were in close "proximity to the alleged incidents").

Accordingly, the Court **OVERRULES** Plaintiff's Objections as to these claims and **GRANTS** Defendants' Motion to the extent that it requests summary judgment on Plaintiff's bystander liability claims against Defendants Clifford and McCloud.

**D.     Supervisory Liability Claims Against Defendants Clifford and McCloud**

Plaintiff also argues that the Magistrate Judge erred in recommending that the Court grant summary judgment as to Plaintiff's supervisory liability claims against Defendants Clifford and McCloud. (*See* ECF No. 98 at 25–26.) The Court again disagrees with Plaintiff's position.

"The principle is firmly entrenched that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). "[T]he theory of supervisory liability arises from the obligation of a supervisory . . . officer to insure that his subordinates act within the law." *Randall v. Prince George's Cty., Md.*, 302 F. 3d 188, 203 (4th Cir. 2002). "Although such a supervisor may not prevent all illegal acts by his subordinates, he is obligated, when on notice of a subordinate's tendency to act outside the law, to take steps to prevent such activity." *Id.* "If a supervisory . . . officer is deliberately indifferent to that responsibility, he then bears some culpability for illegal conduct by his subordinates, and he may be held vicariously liable for their illegal acts." *Id.* (citing *Shaw*, 13 F.3d at 798); *see also Shaw*, 13 F.3d at 798 (stating that supervisory "liability is not premised upon *respondeat superior* but upon 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

factor in the constitutional injuries they inflict on those committed to their care'" (quoting *Slakan v. Porter*, 737 F.2d 368, 372–73 (4th Cir. 1984))).

"[S]upervisory liability may attach under § 1983 if a plaintiff can establish three elements . . . : (1) 'that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff'; (2) 'that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices'; and (3) 'that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.'" *Randall*, 302 F.3d at 206 (quoting *Shaw*, 13 F.3d at 799). "To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Shaw*, 13 F.3d at 799 (citing *Slakan*, 737 F.2d at 373). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* (citing *Slakan*, 737 F.2d at 373–74). "Ordinarily, [a plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan*, 737 F.2d at 373 (citation omitted). "Nor can [a supervisor] reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.*

The Court finds that Plaintiff's supervisory liability claim against Defendants Clifford and McCloud fails at the first step in this analysis. The record reflects that Defendant Blagg has never received discipline for his use of chemical munitions, or that he otherwise was previously accused of using excessive force in the administration of such an agent. (*See* ECF No. 95 at 19.) Defendants supplemented the record with incident reports written by Defendant Blagg between August 2011 and June 2013, which indicate that Defendant Blagg did use chemical agents on inmates nine times during this period—not including the Disciplinary Event.[9] (*See* ECF No. 95, Ex. E at 55–63.) However, these applications of force are clearly distinguishable from the record related to the Disciplinary Event, as—according to his incident reports—Defendant Blagg used chemical agents in response to disturbances created by the inmates. (*See id.*) Absent additional evidence contravening Defendant Blagg's statements in these incident reports, the Court finds that the record in this case fails to establish that Defendant Blagg engaged in the widespread use of excessive force through the administration of chemical agents on inmates. Defendants Clifford and McCloud therefore were not on notice regarding the risk that Defendant Blagg would engage in an excessive use of chemical agents on inmates. Without such notice, Plaintiff's supervisory liability claims against these Defendants fail. *See, e.g.*, *Randall*, 302 F.3d at 206 (stating that, under the first prong of the supervisory liability analysis, "the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions'" (quoting *Shaw*, 13 F.3d at 799)); *see also Gandy v. Robey*,

---

[9] The Court notes that, of these nine prior incidents where Defendant Blagg administered a chemical agent on an inmate, four of these incidents occurred between June 3, 2013 and June 5, 2013—during the period where correctional officers conducted mass cell searches of the segregation units at Mount Olive and within three days of the Disciplinary Event. (ECF No. 95, Ex. E at 55–57, 63.) This sudden spike in Defendant Blagg responding to issues with inmates by using chemical agents is remarkable. However, the record available to the Court in this case does not reflect that these incidents involved excessive force, (*see id.*), or, correspondingly, that Defendants Clifford and McCloud were on notice regarding Defendant Blagg developing a proclivity towards excessively using chemical agents on inmates.

520 F. App'x 134, 143 (4th Cir. 2013) (affirming the district court's grant of summary judgment on the plaintiff's supervisory liability claim where the plaintiff "ha[d] not identified what evidence, if any, she proffered to show that [the] subordinates were engaged in widespread unconstitutional conduct" similar to the plaintiff's allegations of excessive force); *Moore v. Greenwood Sch. Dist. No. 52*, 195 F. App'x 140, 144 (4th Cir. 2006) (affirming the district court's dismissal of the plaintiff's supervisory liability claim where the plaintiff failed to allege that the purported constitutional violation was "customary . . . , nor ha[d] [the plaintiff] alleged even a single prior instance by [the defendant] or any other official at the [institution] analogous to his present claim"); *cf. Shaw*, 13 F.3d at 799–800, 802 (finding that the plaintiff established the first prong of a supervisory liability claim arising, in part, out of an excessive force claim where the supervisor "had knowledge of at least three incidents in which [the subordinate] used excessive force which posed an unreasonable risk of harm").

Accordingly, the Court **OVERRULES** the Objections to the extent that Plaintiff contests the Magistrate Judge's recommendation to grant summary judgment on Plaintiff's supervisory liability claims. The Court further **GRANTS** Defendant's Motion, insofar as it requests summary judgment on Plaintiff's supervisory liability claims against Defendants Clifford and McCloud.

**E.     First Amendment Retaliation Claims Against All Remaining Defendants**

Plaintiff next objects to the Magistrate Judge's recommendation that Defendants are entitled to summary judgment on Plaintiff's First Amendment retaliation claims, which allege that the Disciplinary Event was in retaliation for Plaintiff filing previous lawsuits. (*See* ECF No. 98 at 24–25.) The Court also disagrees with Plaintiff's position as to this claim.

"Retaliation by a public official for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983, even if the act, when taken for different reasons, would have been proper." *Am. Civil Liberties Union of Md., Inc. v. Wicomico Cty., Md.*, 999 F.2d 780, 785 (4th Cir. 1993) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Id.* (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)).

In the prison context, "[i]t is well-established that prisoners may pursue First Amendment claims against corrections officers." *Dunston v. Harrison*, No. 5:11–CV–747–F, 2014 WL 126047, at *11 (E.D.N.C. Jan. 13, 2014) (citing *Turner v. Safley*, 482 U.S. 78, 84 & 86 (1987)). Nonetheless, "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994). "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties." *Id.* "Claims of retaliation [by inmates] must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.*

"A plaintiff seeking to recover for First Amendment retaliation must allege that (1) she engaged in protected First Amendment activity, (2) the defendants took some action that adversely affected her First Amendment rights, and (3) there was a causal relationship between her protected activity and the defendants' conduct." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *see also Booker v. S.C. Dep't of Corr.*, 583 F. App'x 43, 44 (4th Cir. 2014) (providing these elements in the context of a retaliation claim brought by an inmate

36

plaintiff). Regarding the first prong, Plaintiff alleges that the Disciplinary Event was a retaliation for his actions in filing lawsuits. (*E.g.*, ECF No. 65 ¶¶ 37, 39–40.) The Court agrees that Plaintiff's right to access the courts is a cognizable right for purposes of a First Amendment retaliation claim and, as such, satisfies the first element of this analysis. *See McFadden v. Lewis*, 517 F. App'x 149, 150 (4th Cir. 2013) ("Retaliation against an inmate for the exercise of his right to access the courts states a cognizable claim." (citing *Hudspeth v. Figgins*, 584 F.2d 1345, 1347–48 (4th Cir. 1978))).

However, the Court finds that the third element of a retaliation claim—the causation requirement—is clearly not satisfied in this case. "A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia*, that she suffered some adversity *in response to her exercise of protected rights*." *Wicomico Cty.*, 999 F.2d at 785 (second emphasis added) (citation omitted); *see also Adams*, 40 F.3d at 75 (stating that a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right"). "[This] causation requirement is rigorous . . . ." *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1140 (4th Cir. 1990). "[I]t is not enough that the protected [conduct] played a role or was a motivating factor in the retaliation . . . ." *Id.* The plaintiff "must show that 'but for' the protected expression the [defendant] would not have taken the alleged retaliatory action." *Id.* (citations omitted).

Plaintiff alleges that the Disciplinary Event was in retaliation for his constitutionally protected conduct in filing two cases in this District: (1) *Harper v. McCloud*, Civil Action No. 2:12-cv-00656 (S.D. W. Va.), "an excessive force case against [Defendant] McCloud and others;" and (2) *Harper v. Dillion*, Civil Action No. 2:12-cv-04751 (S.D. W. Va.), "a suit that includes retaliation claims against [Defendant] McCloud and others." (ECF No. 65 ¶ 24.) Plaintiff further

argues that Defendants' allegedly retaliatory intent is demonstrated by Plaintiff's averment that "[a]bout a minute or so after [b]eing sprayed by [D]efendant Blagg, [Defendant] McCloud came over and whispered in [Plaintiff's] ear 'now you can file another lawsuit.'" (*Id.* ¶ 19.)

The Court finds that, while this alleged statement by Defendant McCloud is troubling, the record nonetheless fails to establish a causal link between the Disciplinary Event and Plaintiff's prior lawsuits. As an initial matter, Defendant McCloud—a litigant in Plaintiff's prior lawsuits—did not use the pepper spray on Plaintiff. Rather, Defendant Blagg administered the pepper spray following an order given by Defendant Clifford. (*See, e.g.*, ECF No. 65 ¶ 17.) However, there is no evidence in the record that Defendant McCloud told Defendants Blagg or Clifford about Plaintiff's lawsuits. If these Defendants were unaware of these lawsuits, then the Disciplinary Event could not be a retaliatory act in response to Plaintiff's previous litigation. *See, e.g.*, *Huang*, 902 F.2d at 1140 (stating that, in order to succeed in a First Amendment retaliation claim, the plaintiff "must show that 'but for' the protected expression the [defendant] would not have taken the alleged retaliatory action").

Furthermore, the record does not otherwise indicate that there was a conspiracy between Defendants to retaliate against Plaintiff. Plaintiff's only support for this assertion is his assumption that a conspiracy existed because "the circumstance[s] would imply" the existence of this agreement. (ECF No. 95, Ex. A at 40:14–41:5; *see also* ECF No. 65 ¶ 24 ("Plaintiff *believes* the concerted actions of [Defendants] was an [sic] concerted effort to retaliate against [Plaintiff] . . . ." (emphasis added)).) However, such mere allegations and assumptions are insufficient to defeat summary judgment.[10] *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) ("[A]

---

[10] The Court notes that Plaintiff provided allegations regarding Defendants' retaliatory conspiracy in the Complaint. (*See* ECF No. 65 ¶ 19.) The Court further notes that Plaintiff certified the Complaint, (*see id.* at 18), and, as such, it

party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."); *Olliff v. Potter*, Civil Action No. 3:08cv049, 2008 WL 4681986, at *5 (E.D. Va. Oct. 21, 2008) ("Assumptions are insufficient to defeat summary judgment." (citing *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996))).

The Court thus finds that Plaintiff has failed to demonstrate that he suffered a violation of his constitutional rights in response to his exercise of a protected First Amendment right.[11] As such, the Court finds that there is insufficient evidence to support Plaintiff's First Amendment claims and summary judgment is appropriate as to these causes of action. *See, e.g.*, *Wicomico Cty.*, 999 F.2d at 785 ("A plaintiff alleging that government officials retaliated against her in violation of her constitutional rights must demonstrate, *inter alia*, that she suffered some adversity in response to her exercise of protected rights." (citation omitted)).

Accordingly, the Court **OVERRULES** Plaintiff's Objections regarding these claims and **GRANTS** Defendants' Motion, insofar as it requests summary judgment on Plaintiff's First Amendment retaliation claims against all remaining Defendants.

---

operates as a valid affidavit for purposes of summary judgment, *see, e.g.*, *Humple v. Hilewitz*, Civil Action No. 2:13–cv–14618, 2015 WL 5474237, at *3 (S.D. W. Va. Sept. 16, 2015) (discussing the requirements for a complaint to serve as a verified affidavit pursuant to 28 U.S.C. § 1746). However, Federal Rule of Civil Procedure 56 provides that affidavits "must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). There is no indication in the record that Plaintiff's allegations regarding the knowledge of Defendants Blagg and Clifford of the prior lawsuits and Plaintiff's assertions pertaining to the alleged conspiracy are based on his personal knowledge. Instead, as he admits, they are assumptions. (ECF No. 95, Ex. A at 40:14–41:5.) Plaintiff's allegations in his verified complaint regarding the retaliatory intent of Defendants thus do not provide the supported facts necessary to overcome summary judgment. *See, e.g.*, *Walker v. Tyler Cty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001) (finding that the plaintiff's "verified complaint cannot be considered the equivalent of an opposing affidavit" because it was unclear whether the plaintiff's factual allegations were "based on . . . personal knowledge").

[11] As the Court finds that the record clearly does not satisfy the third prong of the First Amendment retaliation claim, it does not address the second prong—whether Defendants took some action that adversely affected her First Amendment rights.

### IV.  Common-Law Battery Claims

Plaintiff's final argument is that the Magistrate Judge erred in recommending that the Court grant summary judgment on Plaintiff's common-law battery claims against all remaining Defendants.[12]  (*See* ECF No. 98 at 27–28.) The Court agrees with Plaintiff's position, in part.

Under West Virginia law, "[a]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 494 (W. Va. 2004) (quoting Restatement (Second) of Torts § 13 (Am. Law Inst. 1965)); *see also Hutchinson v. W. Va. State Police*, 731 F. Supp. 2d 521, 547 (S.D. W. Va. 2010) ("Stated simply, . . . battery is any harmful or offensive contact."). The Supreme Court of Appeals of West Virginia also noted that, in "order to be liable for a battery, an actor must act with the intention of causing a harmful or offensive contact with a person." *Stanley*, 602 S.E.2d at 486 (citation omitted). "An activity that would otherwise subject a person to liability in tort for . . . battery, however, does not constitute tortious conduct if the actor is privileged to engage in such conduct." *Hutchinson*, 731 F. Supp. 2d at 547 (citing *Hinojosa v. City of Terrell, Tex.*, 834 F.2d 1223, 1231 (5th Cir. 1988)). For example, "[a] privilege may be based upon . . . the fact that its exercise is necessary for the protection of some interest . . . of the public which is of such importance as to justify the harm caused or threatened by its exercise." Restatement (Second) of Torts § 10 (Am. Law Inst. 1965).

In this case, the record is clear that Defendants Clifford and McCloud did not directly use any force on Plaintiff, or otherwise offensively touch him in any manner. (*See, e.g.*, ECF No. 65

---

[12] The Court notes that Defendants declined to address Plaintiff's battery claims in their memorandum in support of the Motion. (*See* ECF No. 95.)

¶¶ 12–33.) Plaintiff's battery claim against these two individuals therefore fails. *See, e.g.*, *Lester v. City of Gilbert*, 85 F. Supp. 3d 851, 863 (S.D. W. Va. 2015) (granting summary judgment against the defendant officer where "[t]here [was] no evidence from which a reasonable jury could find that [the officer] made any contact with [the plaintiffs], harmful or otherwise").

Plaintiff's claim against Defendant Blagg is another matter. There is no dispute that Defendant Blagg used force on Plaintiff when he administered two bursts of pepper spray. (*See, e.g.*, ECF No. 95 at 14.) As discussed above, there are genuine issues of material fact as to whether this force was excessive, unnecessary, and unreasonable. If Defendant Blagg's use of force was excessive, then his conduct in touching Plaintiff was undoubtedly offensive and may preclude a finding of privilege as to Plaintiff's battery claim. *See, e.g.*, Restatement (Second) of Torts § 10 (Am. Law Inst. 1965); *cf. Pegg v. Klempa*, Civil Action No. 5:13CV173, 2015 WL 4607696, at *22 (N.D. W. Va. July 31, 2015) (granting summary judgment in favor of the defendants on the plaintiff's battery claim where, in part, any "contact was not offensive as the officers did not use excessive force in this action"). The Court therefore finds that there are genuine issues of material fact as to Plaintiff's battery claim against Defendant Blagg. This claim—as with Plaintiff's Eighth Amendment excessive force claim against Defendant Blagg—is properly left to the decider of fact.[13] *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

---

[13] It is not clear whether Defendants assert that Defendant Blagg is entitled to state qualified immunity for Plaintiff's battery claim. (*See* ECF No. 95 at 16–18.) However, even construing Defendants argument as such, Defendant Blagg is not entitled to state qualified immunity from this claim because there are genuine issues of material fact as to whether he applied pepper spray against Plaintiff maliciously and sadistically to cause harm. *See Parkulo v. W. Va. Bd. of Probation & Parole*, 483 S.E.2d 507, 510 (W. Va. 1996) (discussing state actors' "qualified immunity from personal liability for official acts" and stating that "[t]here is no immunity for an executive official whose acts are fraudulent, malicious, or otherwise oppressive").

41

Accordingly, the Court **OVERRULES** Plaintiff's Objections to the Magistrate Judge's recommendation that the Court grant summary judgment on Plaintiff's battery claims against Defendants Clifford and McCloud. The Court further **GRANTS** Defendants' Motion, insofar as it requests summary judgment on Plaintiff's common-law battery claims against Defendants Clifford and McCloud.

However, the Court **SUSTAINS** Plaintiff's Objections to the Magistrate Judge's recommendation that the Court grant summary judgment as to the battery claim against Defendant Blagg. The Court also **DENIES** Defendants' Motion to the extent that it requests summary judgment on this claim.

### V.  Conclusion

For the reasons provided herein, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** Plaintiff's Objections, (ECF No. 98), and **ADOPTS** the PF&R, (ECF No. 97), to the extent it is consistent with this Memorandum Opinion and Order. The Court **GRANTS** Defendants' Motion, insofar as it requests summary judgment on Plaintiff's bystander liability, supervisory liability, and common-law battery claims against Defendants Clifford and McCloud. (ECF No. 94.) The Court also **GRANTS** Defendants' Motion to the extent that it seeks summary judgment on Plaintiff's First Amendment retaliation claims against all Defendants. (*Id.*) As there are no remaining claims against Defendants Clifford and McCloud, the Court **DISMISSES** these defendants from this case.

The Court further **DENIES** Defendants' Motion, insofar as it requests summary judgment as to Plaintiff's Eighth Amendment excessive force and common-law battery claims against Defendant Blagg. (*Id.*) These claims are properly left to the jury.

42

This case is now ready to move toward a trial. The Court observes that it would be beneficial in a number of ways for Plaintiff to obtain counsel to assist him going forward. Given the fee-shifting scheme available in Section 1983 litigation and the current posture of the case, it is possible that Plaintiff will now be able to retain counsel. Accordingly, the Court **ORDERS** that Plaintiff retain counsel, if he should so choose, within **30 days** of the date of this Memorandum Opinion and Order.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 28, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

43